FOURTH DIVISION

January 22, 2004 

No. 1-02-2871

WILLIAM UNTERSCHUETZ, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

) No. 01 L 6905

)

THE CITY OF CHICAGO, ) Honorable

) Peter Flynn,

Defendant-Appellee. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff William Unterschuetz was discharged from his position at the City of Chicago department of water (Department) for failing to maintain his residence within the City of Chicago, as required by a Chicago ordinance.  He appealed to the personnel board (Board) of the City of Chicago which, after an evidentiary hearing, ordered him restored to his position with full back pay and benefits.  Thereafter, he sued the City of Chicago (City), claiming that five sections of the City ordinance pertaining to the department of personnel constituted a breach of contract, and that the City breached that contract.  That breach, plaintiff averred, entitled him to be reimbursed for attorneys fees and any diminutions of his pension fund that occurred while he was appealing his discharge.

The trial court dismissed plaintiff's claims for failing to state a claim for breach of contract and additionally held that if plaintiff's assertions were construed to sound in tort, the City would be immune pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-109 (West 2000)).  On appeal, plaintiff does not contest the City's immunity in tort, but appeals the dismissal of his breach of contract claim.  Accordingly, the only question raised is whether the plaintiff has alleged all the elements necessary for a breach of contract claim
.  
We affirm.

During 1998 and 1999, the City's inspector general's office ran an investigation to determine whether the plaintiff resided in Chicago as required by the City's personnel rules.  As a result of that investigation, on March 15, 2000, the plaintiff was placed on administrative leave.  The next day, he was informed of charges against him and was given notice of a predisciplinary meeting at which a union representative would be present.  On May 4, 2000, the plaintiff was discharged primarily for failing to reside within the City limits as required by ordinance.  Plaintiff then appealed the decision to discharge with the City's personnel board, and the Board restored the plaintiff to his position with the department of water with full back pay and benefits.

Over a year later, plaintiff brought suit against the City, its department of water, and the Department's commissioner for violating the City's ordinances and rules by discharging him without justification and for violating his rights to due process.  The City removed the case to federal court, after which the plaintiff voluntarily dismissed his due process claim.  The federal district court ruled that it was without jurisdiction to determine the remaining state law claims.

Plaintiff then filed an amended complaint in state court, alleging only a single count for "breach of contract" and naming the "City of Chicago, Department of Water" as the only defendant.  In response, the City filed a motion to dismiss the amended complaint arguing, 
inter alia
, that the Department was not an entity that could be sued and that the plaintiff had failed to identify and attach the contract provisions that he claimed the City had violated.  The trial court granted the City's motion to dismiss, but granted the plaintiff leave to file a second amended complaint.

Plaintiff's second amended complaint named the City as the only defendant and identified five sections of the City ordinance concerning the responsibilities, authority, and policy of the personnel department as the sources of the contractual obligations allegedly violated by the City.  The City filed a motion to dismiss the second amended complaint arguing, 
inter alia
 that the City ordinances plaintiff cited do not create a contract, and that if the complaint were construed to sound in tort, the City would be immune under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2000)).

After briefing the matter, the trial court granted the City's motion and dismissed the case with prejudice for failure to state a cause of action for breach of contract and because "the City is immune pursuant to sections 2-201 and 2-209" of the Tort Immunity Act.
(footnote: 1)  On appeal, plaintiff challenges only the rejection of his contract claim and does not challenge the trial court's dismissal of any tort claims attendant to the facts he has pled.

Plaintiff's only argument on appeal is that the trial court erred in dismissing his second amended complaint for failure to assert a cause of action for breach of contract, pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure.  735 ILCS 5/2-615, 2-619 (West 2000).  Our review of a dismissal pursuant to both sections 2-615 and 2-619 is 
de novo
, and we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party.  
Hanna v. City of Chicago
, 331 Ill. App. 3d 295, 303 (2002).  Under either section, dismissal is proper if the plaintiff fails to allege any set of facts to support a cause of action that would entitle him to relief.  
Stephen L. Winternitz, Inc. v. National Bank of Monmouth
, 289 Ill. App. 3d 753, 755 (1997).  Further:

"A plaintiff cannot rely simply on mere conclusions of law or fact unsupported by specific factual allegations, regardless of whether they generally inform the defendant of the nature of the claim against him or her.  
Grund v. Donegan
, 298 Ill. App. 3d 1034, 1039, 700 N.E.2d 157, 161 (1998); 
Hirsch
 [
v. Feuer
], 299 Ill. App. 3d [1076,] 1081, 702 N.E.2d [265,] 270[ (1998)].  In other words, an actionable wrong cannot be made out merely by characterizing acts as having been wrongfully done.  
Adkins v. Sarah Bush Lincoln Health Center
, 129 Ill. 2d 497, 520, 544 N.E.2d 733, 744 (1989)."  
Weidner v. Midcon Corp.
, 328 Ill. App. 3d 1056, 1059 (2002).

In a claim for breach of contract, therefore, a plaintiff must establish the existence of a contract, the plaintiff's performance of all contractual conditions, defendant's breach of that contract, and consequential damages.  See 
Premier Electrical Construction Co. v. City of Chicago
, 159 Ill. App. 3d 98, 102 (1987).

Plaintiff first asserts that five sections of the City ordinance concerning the responsibilities, authority, and policy of the personnel department , as pled in his complaint, constitute the existence of a contract between the City of Chicago and its employees.  The first section, 2-74-010 of the Chicago Municipal Code (Code), creates merit employment and states as follows:

"It is the general purpose of this ordinance, and it is necessary in the public interest, to establish a system of personnel administration that meets the social, economic, and program needs of the people of the city of Chicago, to provide for a professional and progressive merit system for employment, and to insure flexible career service within the city of Chicago."  Chicago Municipal Code §2-74-010 (1998).

The second section, 2-74-020 (5) and (7), states that the Department is to:

"(5)  Establish and maintain records of all employees in the city service, in which there shall be set forth as to each employee the class title, pay and status, and other relevant data;

* * *

(7)  Certify that persons named on every payroll have been appointed and employed in accordance with the provisions of this ordinance and the rules adopted thereunder."  Chicago Municipal Code §§2-74-020(5), (7) (1998).

Thereafter, section 2-74-050 (14) states in part that a purpose of the personnel board is as follows:

"For the establishment of procedures for departmental review of disciplinary actions taken against departmental employment service employees.  All such procedures shall be approved by the commissioner of personnel[.]"  Chicago Municipal Code §2-74-050(14) (amended November 10, 1987).

Finally, section 2-74-090(B) states:

"No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provisions of this ordinance or in any manner commit or attempt to commit any fraud, prevent the impartial execution of this ordinance and any rules issued thereunder."  Chicago Municipal Code §2-74-090(B) (2003).

Plaintiff then refers to a booklet, entitled "Administrative Hearing Procedures Personnel Board – City of Chicago, effective July 3, 1979, revised 08/93," which defines who is a merit employee and states as follows:

"Administrative Hearing Procedures Section 2.  Definitions.

* * * 

(g)  Employee – a person with career service status."

Plaintiff notes that the City never disputed his status as a merit employee.  In addition, he notes that phrases in section 2-74-010 such as "to provide for a merit system" and "to insure career service" are clear and unambiguous contract language.
(footnote: 2)  Accordingly, in reading the sections with their intended effect, plaintiff claims that both he and the City are bound by them and may not violate them without retribution.  In other words, plaintiff asserts that the sections constitute a contract to which the City and its employees are parties, and that any breach thereof is, in actuality, a breach of that contract.  

For example, plaintiff notes the supreme court's decision in 
Duldulao v. Saint Mary of Nazareth Hospital Center
, 115 Ill. 2d 482, 490 (1987), which held that "an employee handbook or other policy statement creates enforceable contractual rights" if three conditions were met: (1) it contains "a promise clear enough that an employee would reasonably believe that an offer has been made"; (2) "the employee is aware of its contents and reasonably believes it to be an offer"; and (3) the employee accepts the offer "by commencing or continuing to work after learning of the policy statement."  In other words, the court found that to state a claim for breach of contract based upon employment-related policy statements and handbooks, the traditional requirements of offer, acceptance, and consideration were still required, albeit in a somewhat modified form.  Applying those requirements to the present case, plaintiff argues that the expected protection of the merit system is the inducement or offer by the City to an employee; acceptance is the employee commencing his employment based on the relevant Code sections; and the consideration is the mutual promises to abide by indicated contractual rights.

As the City responds, however, "[t]he presumption is that laws do not create private contractual or vested rights, but merely declare a policy to be pursued until the legislature ordains otherwise.  
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 104 (1990).  A party asserting that a law creates a contractual right bears the burden of overcoming this presumption. 
Fumarolo
, 142 Ill. 2d at 104."  
People ex rel. Sklodowski v. State of Illinois
, 182 Ill. 2d 220, 231-32(1998); 
Chicago Limousine Service Inc. v. City of Chicago
, 335 Ill. App. 3d 489, 495 (2002).  

The purpose of this presumption, it seems, is to recognize that the function of a legislative body is to make laws that declare the policy of a governmental body, which laws are subject to repeal when a subsequent legislature decides to alter that policy.  And because the legislature certainly would not countenance posing a possible contract clause violation every time it made a policy alteration, it stands to reason that unless the legislature has clearly evidenced that any of its laws were intended to create a contractual relationship, no such relationship exists.  See 
Fumarolo
, 142 Ill. 2d at 104-05.  For if, as the City posits, laws that lacked specific contractual language could be construed as contracts, legislatures effectively would be powerless to change any law.   
Fumarolo
, 142 Ill. 2d at 104-05.  In short, "[t]he legislature must be free to exercise its constitutional authority without concern that each time a public policy is expressed contractual rights may thereby be created."  
Fumarolo
, 142 Ill. 2d at 106, citing 
Pineman v. Oechslin
, 195 Conn. 405, 416, 488 A.2d 803, 809-10 (1985).

The 
Fumarolo
 court noted, "[i]n determining whether a statute was intended to create a contractual relationship between the State and the affected party, the court must examine the language of the statute. [Citation.]"  
Fumarolo
, 142 Ill. 2d at 104.  The 
Fumarolo
 court then looked to the United States Supreme Court's decision in 
Indiana ex rel. Anderson v. Brand
,

303 U.S. 95, 82 L. Ed. 685, 58 S. Ct. 443 (1938), for factors that court considered in "distinguishing between a legislative enactment that merely created statutory rights and an enactment which created a contract with the State" (
Fumarolo
, 142 Ill. 2d at 104-05):

"In 
Brand
, the Court found that a statute providing for teacher tenure created a contract between the State and the plaintiffs, teachers, because there was clear evidence of the legislative intent to contract. Indicative of such legislative intent was the fact that the word ‛contract' was used throughout the statute to describe the legal relationship between teachers and the State, that the act was a supplement to a preexisting statute requiring that teachers' employment contracts be in writing and that the Indiana court had held that teachers' rights to continued employment pursuant to the teacher tenure act were contractual. 
Indiana ex rel. Anderson v. Brand
, 303 U.S. at 105, 82 L. Ed. at 693, 58 S. Ct. at 448."  
Fumarolo
, 142 Ill. 2d at 105.

In light of that standard, the 
Fumarolo
 court held that even though statutory tenure provisions for public school principals granted very specific and secure statutory rights and benefits, "there is no indication in the statute or in our State law that the legislature intended to create vested contractual rights through enactment of the statute."  
Fumarolo
, 142 Ill. 2d at 105. 

In the present case, the Code sections identified by the plaintiff seem only to express some of the purposes and goals that pertain to the department of personnel.  For example, section 2-74-010 states that the purpose of the personnel ordinance is to establish "a professional and progressive merit system for employment."  Chicago Municipal Code §2-74-010 (1998).  Section 2-74-020 lists the goals and authority of the department of personnel in more detail and, in the particular sections cited by the plaintiff, calls for the department of personnel to maintain records of all employees' "class title, pay and status, and other relevant data," and to certify that everyone on the payroll has been appointed and employed in accordance with the pertinent rules.  Chicago Municipal Code §§2-74-020(5), (7) (1998).  Thereafter, section 2-74-050(14) appears to require the department of personnel to establish rules for review of disciplinary actions (Chicago Municipal Code §2-74-050(14) (amended November 10, 1987)), and section 2-74-090(B) seems simply to forbid employees from making false statements or committing fraud in connection with appointments (Chicago Municipal Code §2-74-090(B) (2003)).

Nevertheless, the word "contract" is not mentioned in any of the sections cited by plaintiff.  And while plaintiff is correct that the term "contract" need not explicitly be used to find the existence of contractual rights (see, 
e.g., 
Yellow Cab Co. v. City of Chicago
, 396 Ill. 388, 402 (1947)), the fact remains that it 
is
 an element to be considered.  In addition, as the City states, we find that no offer has been made by any of the Code sections, and that no one has been asked to accept any contract or tender consideration for any act by the City.  In other words, we agree with the City that the sections contain none of the essential requirements for creating a contract.  Rather, as previously stated, it appears that they simply announce various policies that the City intends to carry out until such time as the city council wishes to change those policies.

More telling, however, is that the plaintiff has not provided any argument to rebut the presumption that laws are not contracts.  Rather, the second amended complaint states that "the aforestated [sections] are contractual conditions of [Unterschuetz's] employment," but does not indicate any language that might support that conclusion.  As noted, such legal conclusions are to be ignored on a motion to dismiss, as the plaintiff was required to plead 
facts
, not law.  
Weidner
, 328 Ill. App. 3d at 1059.

However, plaintiff does make the arguments in his appellate briefs that ordinances, like handbooks, can create contractual conditions of employment, and that phrases in section 2-74-010 such as "to provide for a merit system" and "to insure career service" are clear and unambiguous contract language.  Even if we were to assume that plaintiff could use his appellate brief as a substitute for pleading sufficient facts, we find that both arguments are not well taken and are made with virtually no supporting legal authority.  

As the City notes, the plaintiff has not cited a single case concerning 
de facto
 contractual conditions of employment, save 
Duldulao
.  In 
Duldulao
, however, the supreme court specifically limited its holding by stating that only "under proper circumstances" may an employee handbook be contractually binding.  
Duldulao
, 115 Ill. 2d at 487.  Accordingly, it becomes the plaintiff's obligation in this case to explain why his case fell "under proper circumstances" and was not controlled by the general rule.  

Further, plaintiff's argument that 
Duldulao
 is controlling or, at least, persuasive authority is greatly undermined by the fact that there is a presumption against considering laws to be contractual; no such presumption exists for employee handbooks.  As the City asserts, the reason for this seems fairly clear: an employee handbook, by definition, governs the relationship between employer and employee.  Accordingly, the only relevant question to be raised with respect to a handbook is whether it makes contractual policies or sets out current working policies that are subject to change.  Laws, it is presumed, are always subject to change unless the language of a law specifically states differently.  Accordingly, the burden for the plaintiff in the present case is actually tougher to meet than the plaintiff's in 
Duldulao
.  

In light of that burden, the facts in 
Duldulao
 indicate that plaintiff has not pled adequate facts, even in his appellate briefs, to state a claim for breach of contract.  In 
Duldulao
, the court focused on the particular disciplinary procedures described within an employee handbook and concluded that they constituted a specific offer for a unilateral contract--the employer's promise in exchange for the employee's labor.  
Duldulao
, 115 Ill. 2d at 490-91.  Specifically, the handbook stated:

" ‛At the end of 90 calendar days since employment the employee becomes a permanent employee and termination contemplated by the hospital 
cannot occur
 without proper notice and investigation.'  (Emphasis added.)   It states that permanent employees ‛
are never
 dismissed without prior written admonitions and/or an investigation that has been properly documented' (emphasis added), and that ‛three warning notices within a twelve-month period 
are required
 before an employee is dismissed, except in the case of immediate dismissal.'  (Emphasis added.)"  
Duldulao
, 115 Ill. 2d at 490-91. 

In light of those provisions, the 
Duldulao
 court held that "[a]n employee reading the handbook would thus reasonably believe that, except in the case of a very serious offense, he or she would not be terminated without prior written warnings."  
Duldulao
, 115 Ill. 2d at 491. Moreover, it found the handbook's language that its policies " ‛are designed to clarify your rights and duties as employees' " (emphasis omitted) (
Duldulao
, 115 Ill. 2d at 491) "is such that an employee would reasonably believe that after the expiration of the initial probationary period the progressive disciplinary procedure would be part of the employer's offer" (
Duldulao
, 115 Ill. 2d at 491-92).  And where there was no question that the plaintiff continued to work with knowledge of the handbook provisions, the court found them to be contractually binding on the employer.  
Duldulao
, 115 Ill. 2d at 492.

In the present case, however, the only contractual language the plaintiff mentions is that the Code is "to provide for a merit system" and "to insure career service."  Yet the Code itself describes these goals as its "general purpose," and states nothing about specific employees rights, much less a list of particular disciplinary procedures to be followed contingent upon an employee's acceptance of employment or his or her continuing to work.  This language does not match the specific language of offer and acceptance at issue in 
Duldulao
.  Thus, even if the plaintiff in this case had the same factual burden to overcome as the plaintiff in 
Duldulao
, and even if we were to look beyond plaintiff's second amended complaint for a factual basis for his claim, he has still failed to plead adequate facts.

Alternatively, even if we were to find the Code sections in question to be contractual, the plaintiff has failed to plead a breach of any of those laws.  The City is correct in noting that none of the Code sections plaintiff cites actually prohibits the City from knowingly discharging an employee without cause or even states a policy related to this issue.  In fact, as the City notes, "discharge without cause is common in systems of at-will employment, and there is no public policy forbidding them."  Moreover, the Code's stated general intent of establishing a "merit system" appears in no way inconsistent with the City's power to dismiss employees at will.  As noted above, none of the Code sections say anything about the conditions under which discharges might be made or offer any definition of "merit system" that could limit the City's power to discharge employees at will.  And the fact that section 2-74-050(14) establishes a review process for disciplinary reasons (Chicago Municipal Code §2-74-050(14) (amended November 10, 1987)), seems to suggest only that employees occasionally may be dismissed without a justifiable reason and that the Board is empowered, in such situations, to restore those employees to City employment with full back pay and benefits.  We find nothing in these sections that can be read to suggest that no one at the City would ever make judgments concerning an employee's employment status that were unsupported by the preponderance of the evidence.

Moreover, as the administrative hearing procedures of the personnel board make clear, the most an employee can expect from a review of a discharge is reinstatement with full back pay.  See Administrative Hearing Procedures, Personnel Board, City of Chicago §27(g) (eff. July 3, 1979, revised, 1993).  Accordingly, where the Board in the present case awarded the plaintiff "full back-pay" and reinstated his job, it gave the plaintiff the most it was authorized to give.  And where plaintiff cannot demonstrate that any ordinance or rule that requires the Board to provide him with the indemnification for attorneys fees and pension fund losses that he is seeking, it cannot be said that the Board's action was in any way a breach of any purported contract, much less that he was able to plead the required element of damages for his claim.

As the City concedes, however, the only section that possibly could be brought into question by the allegations of plaintiff's complaint, even if it were to be deemed a contractual ordinance, is section 2-74-090(B):

"No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provisions of this ordinance or in any manner commit or attempt to commit any fraud, prevent the impartial execution of this ordinance and any rules issued thereunder."  Chicago Municipal Code §2-74-09(B) (2003).

In his complaint, plaintiff indeed raises the accusation that "City agents committed fraud *** [and] lied."  However, he fails to support this allegation with any facts.  As the City states, "Unterschuetz does not say who lied, when they lied, or what lies they told, nor is there any evidence in the record of any lies."  As previously stated, "mere conclusions of law or fact unsupported by specific factual allegations in a complaint are disregarded on a motion to dismiss."  
Doe v. Calumet City
, 161 Ill. 2d 374, 385 (1994).  Consequently, plaintiff's claim for a violation of section 2-74-090(B) also fails because it is not supported by any facts.

Finally, the plaintiff's remaining accusations – that the City knew the charges against him were false and that City agents prevented the impartial execution of the ordinances and breached the spirit of the merit system – do not state violations of section 2-74-090(B), as none of these allegations is the same as knowingly lying about a false cause for dismissal.  Indeed, as the record reflects, neither the Board nor, consequently, the plaintiff could assert that any City official lied about the plaintiff's continued employment with the City.  Particularly, the Board noted that the department of water's decision to discharge the plaintiff was based on reasonable evidence from its own internal investigation.  And although the City knew that the plaintiff claimed to live in the City, it seems impossible to say that the department of water acted with fraud or mendacity in giving more credibility to its own investigators than to the plaintiff.

Because the plaintiff has not pled the existence of a promise by the City or an acceptance by himself and has failed to demonstrate any violation of any policy by the City in the cited Code sections, he has not adequately pled facts to support his contentions.  As such, we affirm the trial court's dismissal of plaintiff's claim for failing to state a cause of action for breach of contract.

Affirmed.

HARTMAN and THEIS, JJ., concur.

FOOTNOTES
1:  As the City points out, the reference to section 2-209 was a typographical error.  It is clear from the City's description of the section at issue that the correct citation is to section 2-109, which is the companion provision to section 2-201 and provides that the City is not liable where a public employee is not liable.  

2:  Plaintiff remarks that "[t]he word ‛insure' has a recognized meaning and [that] Webster's International Dictionary is quoted by the Tennessee Supreme Court.  The word is defined as ‛[t]o make sure or secure; to guarantee.'  
State v. Mutual
, 61 S.W. 2d 664, 665, 166 Tenn. 260 (1933)."