COMPLETE CONFERENCE COORDINATORS, INC., Plaintiff-Appellant, v. KUMON NORTH AMERICA, INC., Defendant (Katherine E. Lichter, Defendant-Appellee).

Second District   No. 2—08—0506

Opinion filed August 14, 2009.

Carol L. Anfinson, of Aurora, for appellant.

Russell J. Heitz, of Heitz & Bromberek, of Naperville, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Complete Conference Coordinators, Inc., appeals the trial court's ruling granting summary judgment in favor of plaintiff's

former employee, defendant Katherine Lichter, on plaintiff's claim for intentional interference with a contractual relationship. The claim was based on defendant allegedly inducing one of plaintiff's clients, Kumon North America, Inc. (Kumon), to breach its contract with plaintiff in favor of a new contract with defendant shortly after defendant left plaintiff's employ. (Plaintiff also brought a claim for breach of contract against Kumon, but the parties settled the claim.) On appeal, plaintiff argues that (1) the trial court erred in ruling that, due to lack of foundation, it could not consider three exhibits plaintiff introduced in opposition to defendant's motion for summary judgment, and (2) the trial court erred when it ruled that, even if it were to consider the contested exhibits, defendant was entitled to summary judgment. For the reasons that follow, we affirm the judgment of the trial court.

In response to defendant's motion for summary judgment, plaintiff attached several exhibits to lay out the basis for its claim that defendant interfered with its contract with Kumon. The first exhibit, a partial transcript of the deposition testimony of Carol Kuc, plaintiff's owner, included Kuc's testimony that defendant asked Kuc to sign the Kumon contract over to her in July 2000 but that Kuc declined. Kuc testified that defendant again requested that Kuc sign over Kumon's contract in early August 2005, and Kuc recalled that the two discussed the idea over lunch on August 11. After that conversation, Kuc noticed that defendant had failed to send an invoice to Kumon, and, when Kuc asked defendant about the discrepancy, "her response was 'It's my money.' " Kuc said that defendant then told her "that if [Kuc] would sign over Kumon, she wouldn't bother any of the other clients." Kuc testified that she declined to sign over the Kumon contract, and she recalled that, on August 15, defendant tendered her a letter indicating that defendant was resigning as an officer of plaintiff but would continue, at least temporarily, as an employee of plaintiff. According to Kuc, "on the 17th, she came in in the morning ***, said her resignation was effective immediately and left."

The next exhibit attached to plaintiff's response opposing summary judgment was a printout purporting to be an e-mail, sent at approximately 10 p.m. on August 15, 2005, from defendant to a contact at Kumon. The e-mail states as follows:

"I wanted to inform you that I have resigned my position as [an officer of plaintiff] effective immediately. I have offered to stay on for a short time to wrap up my projects and make the transition for them as smooth as possible. I have informed Carol Kuc, [plaintiff's] President, that it is my intention to start my own business and continue meeting planning.

I will give you a call in the morning to discuss the current status of your projects."

The next exhibit, a copy of a telephone invoice, indicates three calls made on the morning of August 16; in its response, plaintiff indicated that the telephone invoice was obtained during discovery and that the three calls were from defendant to Kumon. (Defendant attached a portion of Kuc's deposition to her motion for summary judgment; in that portion of the deposition, Kuc testified that she could not know what defendant and Kumon discussed during these calls.)

The next exhibit, a letter from Kumon to plaintiff dated August 16, 2005, states as follows in pertinent part:

"We at [Kumon] appreciate the service [plaintiff] has provided us over the years. However, I am writing to inform you that we will not need the assistance of your company for any upcoming conferences or events for budgetary and other considerations."

In its response, plaintiff stated that the letter was dated August 16 but was postmarked August 17.

Plaintiff's next exhibit purports to be a copy of an August 22 e-mail from defendant to Kumon, indicating her new contact information and asking if she could pass the information on to others (presumably others who worked at Kumon). Another of plaintiff's exhibits, a printout that appears to be Kumon's August 22 e-mail response, confirms Kumon's new relationship with defendant.

The above e-mail exhibits do not appear in the record at any point prior to plaintiff's response in opposition to summary judgment, and plaintiff's response and accompanying documents include nothing to verify the authenticity of the e-mail printouts. During argument on the motion for summary judgment, defendant argued that there was no foundation to show that the e-mail evidence was authentic, and plaintiff responded that the e-mails had been produced by defendant during discovery. (Plaintiff argued that its response in opposition to summary judgment established the source of the e-mails. Plaintiff's response does say that "[t]he documents produced in discovery from [defendant] show" that defendant sent various e-mails, but there is no affidavit or other authentication attached to the motion.) The trial court ruled that the e-mail exhibits were inadmissible for lack of foundation and that, even if it were to consider the e-mails, plaintiff had failed to present evidence that defendant actively persuaded or otherwise encouraged Kumon to breach its contract with plaintiff.

Plaintiff thereafter moved for reconsideration, and it attached to its motion an affidavit from its attorney attesting that the above-described e-mail exhibits were received from defendant during

discovery. The trial court denied the motion to reconsider but granted plaintiff leave to file the affidavit, as well as leave to file defendant's actual discovery responses, which included the above-described e-mails. Plaintiff timely appeals.

Plaintiff first argues on appeal that the trial court erred in ruling that the e-mail exhibits were inadmissible for lack of foundation. Evidence that would be inadmissible at trial is not admissible in support of or in opposition to a motion for summary judgment. *Dangeles v. Muhlenfeld*, 191 Ill. App. 3d 791, 799-800 (1989). "In civil cases in Illinois, the basic rules of evidence require a proponent of documentary evidence to lay a foundation for the introduction of that document into evidence." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 42 (2000). "Evidence must be presented to demonstrate that the document is what its proponent claims it to be." *Anderson*, 314 Ill. App. 3d at 42. "Without proper authentication and identification of the document, the proponent of the evidence has not provided a proper foundation and the document cannot be admitted into evidence." *Anderson*, 314 Ill. App. 3d at 42.

Plaintiff initially contends that the trial court erred in excluding the e-mail evidence, because it fell within the categories of evidence allowed in summary judgment proceedings (see 735 ILCS 5/2—1005 (West 2006) (allowing pleadings, depositions, admissions, and affidavits as proof)), because the e-mails fit within the exception to the hearsay rule allowing admissions against interest, or because plaintiff submitted a valid affidavit (executed by plaintiff's attorney) along with the e-mails. However, since the trial court declined to allow the e-mails into evidence because it concluded that they were not properly authenticated, plaintiff's contentions do not address the trial court's reasoning. The question on appeal is whether the trial court committed reversible error in declining to admit the e-mails for lack of authentication.

On the authentication issue, plaintiff argues that the documents were established as authentic because defendant, who was alleged to have created or received the e-mails, produced them in response to a discovery request. Our independent research reveals that other jurisdictions have enacted civil procedure rules allowing the fact that a party produced a document in discovery to establish its authenticity (see Tex. R. Civ. 193.7) or have otherwise adopted the position that production of a document can establish its authenticity (see *United States v. Brown*, 688 F.2d 1112 (7th Cir. 1982)). However, plaintiff cites no Illinois authority laying out a similar rule; in fact, as defendant notes, plaintiff cites no authority whatsoever for its assertion that documents produced in discovery should be considered

authenticated. In the absence of any argument citing such authority, we will not create the rule validating authentication by production in Illinois.

Indeed, even if we were inclined, and empowered, to create such a rule, the circumstances of this case do not provide any compelling reason for us to do so. Plaintiff had ample opportunity to authenticate the documents through conventional, widely accepted, and common means: it indicated at oral argument that it had deposed defendant and thus had the opportunity to ask defendant to verify the authenticity of the e-mails while she was under oath. However, plaintiff declined to do so, because, it said at oral argument, it wanted to avoid revealing its theory of the case. Whatever the merits of that strategy, it also carried a fatal flaw: while plaintiff's strategy kept defendant from learning plaintiff's theory of the case, the strategy also precluded plaintiff from exploring and developing its theory of the case—the very purpose of the discovery process. For the reasons stated, we conclude that, because plaintiff failed to provide anything to the trial court to authenticate the e-mails other than the fact that defendant produced them in discovery, the trial court did not err in deeming the e-mails inadmissible.

Plaintiff also argues that the trial court erred in ultimately granting summary judgment. Summary judgment is appropriate only where " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Maxit, Inc. v. Van Cleve*, 231 Ill. 2d 229, 235 (2008), quoting 735 ILCS 5/2—1005(c) (West 2004). A reviewing court considers *de novo* the question of whether summary judgment was appropriate in a given case. *Maxit*, 231 Ill. 2d at 235-36.

In its brief, plaintiff frames this issue by arguing that the trial court erred in concluding that, even if the e-mail evidence were admitted, defendant was entitled to summary judgment. However, since we hold above that the trial court did not err in excluding the e-mails, we do not consider them in our assessment of the evidence. At oral argument, plaintiff argued that it produced enough evidence to survive a motion for summary judgment even in the absence of the e-mails. We disagree. To state a cause of action for tortious interference with a contractual relationship, a plaintiff must establish (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages. *In re Estate of Albergo*, 275 Ill. App. 3d 439, 446 (1995).

■ As defendant argues in her brief, plaintiff presented no evidence to establish the third and fourth of these elements. Plaintiff offers that, even without the e-mails, these elements were shown by at least some circumstantial evidence, in the form of Kuc's testimony indicating that defendant wanted Kumon's business (and even told Kuc that the proceeds of Kumon's business with plaintiff were " '[her] money' ") and the fact that defendant actually acquired Kumon's business after she left plaintiff's employ. However, as defendant says, even if plaintiff demonstrated that defendant wanted Kumon's business while Kumon was working with plaintiff and that defendant obtained Kumon's business after Kumon ceased working with plaintiff, those facts do nothing to show Kumon's reason for ceasing work with plaintiff or defendant's involvement in Kumon's decision. Plaintiff further argues that Kumon's stated reason for ceasing work with plaintiff—it said it did so for "budgetary and other considerations"—is not believable in light of the similar prices charged by defendant and therefore supports plaintiff's theory that defendant induced Kumon to cease its relationship with plaintiff. However, even if Kumon offered plaintiff a pretextual explanation for its decision, the truth or falsity of its explanation to plaintiff does nothing to show that the decision was actually induced by defendant. In short, we agree with the trial court, and with defendant, that plaintiff failed to produce any evidence tending to prove that defendant induced Kumon to breach its contract with plaintiff.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.