THIRD DIVISION
March 10, 2010

No. 1-08-3113

| | | |
|---|---|---|
| JONATHAN C. DOPKEEN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC E. WHITAKER, | ) | Honorable |
| | ) | Sheldon Gardner, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Jonathan C. Dopkeen, filed a complaint alleging tortiuous interference with a contract against defendant, Eric Whitaker. The circuit court granted defendant's motion to dismiss plaintiff's second amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2006)). On appeal, plaintiff argues that the circuit court erred in dismissing his complaint where he stated a cause of action against defendant and where defendant's actions were not protected by absolute or public official immunity. For the following reasons, we affirm.

BACKGROUND

This case arose from the removal of plaintiff from the office of Assistant Director of Public Health by defendant, who served as the Director of Public Health at the time of plaintiff's

removal. On January 17, 2005, after being reappointed by the Governor and confirmed by the Senate of Illinois, plaintiff began serving his second two-year term as Assistant Director of Public Health. On January 18, 2007, defendant removed plaintiff from that office and notified plaintiff of his removal in a letter dated January 24, 2007. Defendant also instructed the Comptroller's office to cease paying plaintiff's salary and benefits as of January 18, 2007. At the time of plaintiff's removal, no successor had been appointed by the Governor nor confirmed by the Senate. No issue was raised regarding plaintiff's fitness and ability to continue serving as Assistant Director of Public Health.

Plaintiff demanded that defendant: (1) rescind his order to remove plaintiff from office; (2) restore plaintiff to all of the rights, benefits and privileges of that office; and (3) instruct the Comptroller's office to pay plaintiff as required by law. Defendant refused to comply with plaintiff's demand and defendant subsequently resigned from his position as Director on September 14, 2007.

On September 7, 2007, plaintiff filed a complaint, which was subsequently amended. In his second amended complaint, plaintiff alleged that defendant tortiously interfered with an employment contract between plaintiff and the State of Illinois where, pursuant to section 5-610 of the Civil Administrative Code of Illinois (20 ILCS 5/5-610 (West 2006)), plaintiff was to continue as Assistant Director because the Governor had not nominated, nor had the Senate approved, a successor. As such, plaintiff alleged that defendant had no authority to terminate him.

Defendant filed a motion to dismiss plaintiff's complaint pursuant to sections 2-615 and 2-

1-08-3113

619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2006)). Defendant argued that plaintiff failed to state a cause of action where no valid contract existed between plaintiff and the State of Illinois and that the doctrines of absolute and public official immunity shielded defendant from liability in this matter. Following oral arguments, the circuit court granted defendant's motion to dismiss. In its written order, the circuit court, citing Gaiser v. Village of Skokie, 271 Ill. App. 3d 85 (1995), and Gust v. Village of Skokie, 125 Ill. App. 3d 102 (1984), explained, "Although a statute may control the conditions of particular government employees, the controlling statute does not create any vested rights in there [*sic*] continued existence." The court concluded, "Defendant was acting within the scope of his authority to terminate the plaintiff and such actions are protected by absolute immunity, and public official immunity." Plaintiff now appeals.

ANALYSIS

Plaintiff argues that the circuit court erred in dismissing his second amended complaint for failure to assert a cause of action for tortious interference with a contractual relationship. Our review of a dismissal pursuant to both sections 2-615 and 2-619 is *de novo*, and we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. Kopchar v. City of Chicago, 395 Ill. App. 3d 762, 766 (2009). Under either section, dismissal is proper if the plaintiff fails to allege any set of facts to support a cause of action that would entitle him to relief. Stephen L. Winternitz, Inc. v. National Bank of Monmouth, 289 Ill. App. 3d 753, 755 (1997).

In a claim for tortious interference with a contractual relationship, plaintiff must establish:

1-08-3113

"(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." Complete Conference Coordinators, Inc. v. Kumon North America, Inc., 394 Ill. App. 3d 105, 109 (2009).

Plaintiff asserts that provisions of Article 5 of the Civil Administrative Code concerning the structure of the Department of Public Health, as pled in his complaint, created a contract between plaintiff and the State of Illinois, such that plaintiff's appointment as Assistant Director of Public Health was not at-will employment.

Article 5 of the Civil Administrative Code of Illinois is also known as the Departments of State Government Law. 20 ILCS 5/5-1 (West 2006). Article 5 sets forth the structure of the Executive Branch, including the Department of Public Health. 20 ILCS 5/5-15 (2006). Article 5 creates the directors of departments of state government, including the Director of the Department of Public Health, the office previously occupied by defendant. 20 ILCS 5/5-20 (West 2006). Article 5 also creates assistant director positions for these departments, including the Assistant Director of Public Health, the office previously occupied by plaintiff. 20 ILCS 5/5-170 (West 2006). The persons who fill these offices created by Article 5 are "officers" of the State of Illinois. 20 ILCS 5/5-300 (West 2006). With respect to the term of service for an officer, section 5-610 provides: "Each officer whose office is created by the Civil Administrative Code of Illinois *** shall hold office for a term of 2 years from the third Monday in January of each odd-numbered year and until the officer's successor is appointed and qualified." 20 ILCS 5/5-610

-4-

1-08-3113

(West 2006).

In reading these provisions, plaintiff maintains that the sections of Article 5 constitute a contract to which the State of Illinois and the officers are bound where officers are subject to appointment by the Governor and Senate approval and serve for a definite duration.

However, as defendant responds, "Statutes governing wages, working conditions and benefits of public employees do not create any vested rights ***." Gaiser v. Village of Skokie, 271 Ill. App. 3d 85, 92 (1995), citing Gust v. Village of Skokie, 125 Ill. App. 3d 102, 106-07 (1984). When determining whether an ordinance or statute creates a contract, it is well settled:

> " ' "[T]he presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' " A party who asserts that a State law creates contractual rights has the burden of overcoming the presumption that a contract does not arise out of a legislative enactment' Fumarolo v. Chicago Board of Education, 142 Ill. 2d 54, 104 *** (1990), quoting National R.R. Passenger Corp. v. Atchinson, Topeka & Santa Fe Ry. Co., 470 U.S. 451, 466, 84 L. Ed. 2d 432, 446, 105 S. Ct. 1441, 1451 (1985), quoting Dodge v. Board of Education, 302 U.S. 74, 79, 82 L. Ed. 57, 61, 58 S. Ct. 98, 100 (1937)." Chicago Limousine Service, Inc. v. City of Chicago, 335 Ill. App. 3d 489, 495 (2002) (finding that the city's livery ordinance did not create a contract between the city and the plaintiff company).

The purpose of such a presumption "is to recognize that the function of a legislative body is to

make laws that declare the policy of a governmental body, which laws are subject to repeal when a subsequent legislature decides to alter that policy. And because the legislature certainly would not countenance posing a possible contract clause violation every time it made a policy alteration, it stands to reason that unless the legislature has clearly evidenced that any of its laws were intended to create a contractual relationship, no such relationship exists." Unterschuetz v. City of Chicago, 346 Ill. App. 3d 65, 71 (2004), citing Fumarolo, 142 Ill. 2d at 104-05.

In Fumarolo, our supreme court noted, "[i]n determining whether a statute was intended to create a contractual relationship between the State and the affected party, the court must examine the language of the statute." Fumarolo, 142 Ill. 2d at 104. The Fumarolo court then looked to the Unites States Supreme Court's decision in Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 82 L. Ed. 685, 58 S. Ct. 443 (1938), for factors that court considered in "distinguishing between a legislative enactment that merely created statutory rights and an enactment which created a contract with the State." Fumarolo, 142 Ill. 2d at 104-05. The Fumarolo court observed:

"In Brand, the Court found that a statute providing for teacher tenure created a contract between the State and the plaintiffs, teachers, because there was clear evidence of the legislative intent to contract. Indicative of such legislative intent was the fact that the word 'contract' was used throughout the statute to describe the legal relationship between teachers and the State, that the act was a supplement to a preexisting statute requiring that teachers' employment contracts be in writing and that the Indiana court had held that teachers' rights to continued employment pursuant to the teacher tenure act were

contractual. <u>Indiana ex rel. Anderson v. Brand</u>, 303 U.S. at 105, 82 L. Ed. at 693, 58 S. Ct. at 448." <u>Fumarolo</u>, 142 Ill. 2d at 105.

In light of that standard, the <u>Fumarolo</u> court found that even though statutory tenure provisions for public school principals granted very specific and secure statutory rights and benefits, "there [was] no indication in the statute or in our State law that the legislature intended to create vested contractual rights through enactment of the statute." <u>Fumarolo</u>, 142 Ill. 2d at 105.

In <u>Unterschuetz</u>, this court more recently applied the same standard and determined that the language of the city's ordinance that established its personnel administration did not evince an intent by the city council to create a contract between the city and its employees. <u>Untershuetz</u>, 346 Ill. App. 3d at 72-73. Rather, the ordinance stated the policy that the city intended to carry out until such time as the city council wished to change those policies. This court noted that "contract" was not used in the ordinance and the sections cited by the plaintiff contained "none of the essential requirements for creating a contract." <u>Untershuetz</u>, 346 Ill. App. 3d at 73.

Similarly, in the present case, we cannot say that Article 5 of the Civil Administrative Code of Illinois conferred a contractual right upon plaintiff. There is no express language within Article 5 creating private contractual rights or otherwise indicating that the State was entering into a contract with plaintiff. Rather, the language seems to at best convey the policies that the State intends to carry out until such time as it wishes to alter those policies. Had the State wanted to create a contractual right, it could have easily done so through the use of express contractual terms like "contract," "covenant," or "vested rights." In the absence of any such express language, it does not appear that the State intended to enter into a contract with plaintiff.

1-08-3113

Plaintiff, nonetheless, relies on <u>Duldulao v. Saint Mary of Nazareth Hospital Center</u>, 115 Ill. 2d 482 (1987), in support of his argument that the present statute, like an employee handbook, created specific contractual conditions of employment. In <u>Duldulao</u>, our supreme court focused on particular disciplinary procedures described within an employee handbook and concluded that they constituted a specific offer for a unilateral contract - the employer's promise in exchange for the employee's labor. <u>Duldulao</u>, 115 Ill. 2d at 490-91. Our supreme court explained that the handbook provided:

" '[A]t the end of 90 calendar days since employment the employee becomes a permanent employee and termination contemplated by the hospital *cannot occur* without proper notice and investigation.' (Emphasis added.) It states that permanent employees '*are never* dismissed without prior written admonitions and/or an investigation that has been properly documented' (emphasis added), and that 'three warning notices within a twelve-month period *are required* before an employee is dismissed, except in the case of immediate dismissal.' (Emphasis added.)" <u>Duldulao</u>, 115 Ill. 2d at 491.

Considering these provision, the <u>Duldulao</u> court held that "[a]n employee reading the handbook would thus reasonably believe that, except in the case of a very serious offense, he or she would not be terminated without prior written warnings." <u>Duldulao</u>, 115 Ill. 2d at 491. Moreover, the court found that the handbook's language that its policies " 'are designed to clarify your rights and duties as employees (emphasis omitted)' " (<u>Duldulao</u>, 115 Ill. 2d at 491) "is such that an employee would reasonably believe that after the expiration of the initial probationary period the progressive disciplinary procedure would be part of the employer's offer" (<u>Duldulao</u>, 115 Ill. 2d at 491-92).

-8-

There was also no question that the plaintiff accepted the handbook provisions by continuing to work with knowledge of the provisions. Duldulao, 115 Ill. 2d at 492. The Duldulao court therefore concluded that the employee handbook created enforceable contractual rights.

Here, the language plaintiff relies on is found in section 5-610, which provides for employment for a term of "2 years from the third Monday in January of each odd-numbered year" and "until the officer's successor is appointed and qualified." 5 ILCS 5/5-610 (West 2006). Article 5 does not describe any specific employee rights or a list of disciplinary procedures to be followed contingent upon an employee's acceptance of employment or continuing to work. There is no similar language in the present case to that at issue in Duldulao.

Further, as this court previously explained in Unterschuetz, our supreme court specifically limited its holding in Duldulao by stating that only " 'under proper circumstances' " may an employee handbook be contractually binding. Unterschuetz, 346 Ill. App. 3d at 73, quoting Duldulao, 115 Ill. 2d at 487. Therefore, it was plaintiff's burden to explain why his case fell " 'under proper circumstances' " and was not controlled by the general rule. Unterschuetz, 346 Ill. App. 3d at 73, quoting Duldulao, 115 Ill. 2d at 487.

Moreover, plaintiff's reliance on Duldulao is undermined by the fact that there is a presumption against considering statutes to be contractual; whereas, no such presumption exists for employee handbooks. "[T]he reason for this seems fairly clear: an employee handbook, by definition, governs the relationship between employer and employee. Accordingly, the only relevant question to be raised with respect to a handbook is whether it makes contractual policies

or sets out current working policies that are subject to change. Laws, it is presumed, are always subject to change unless the language of a law specifically states differently." <u>Unterschuetz</u>, 346 Ill. App. 3d at 73-74. Plaintiff has not met this higher burden to show that the statute in this case should not be controlled by the general rule against considering it to be contractual.

We note that this case also raises the issue whether the doctrine of sovereign immunity precluded jurisdiction in this case. Section 8(d) of the Court of Claims Act specifically provides: "The [C]ourt [of Claims] shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the [s]tate for damages in cases sounding in tort ***." 705 ILCS 505/8(d) (West 2006). However, the parties did not address the argument that the Court of Claims had exclusive jurisdiction in this case.

CONCLUSION

For the above stated reasons, we affirm the circuit court's dismissal of plaintiff's complaint.

Affirmed.

MURPHY, P.J. and STEELE, J., concur.