2026 IL App (1st) 251008-U
No. 1-25-1008
Order filed April 10, 2026

Sixth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| BLITZ CAPITAL GROUP LLC, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | |
| v. | No. 24 CH 00951 |
| NORTH DEARBORN PROPERTY LLC and STRATEGIC PROPERTIES OF NORTH AMERICA LLC, | The Honorable Sophia H. Hall, Judge, presiding. |
| Defendants-Appellees. | |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirming order dismissing breach of contract and fraud claims with prejudice.

¶ 2    North Dearborn Property LLC contracted with the 200 North Dearborn Condominium

Association to purchase and "deconvert" the condominium units into apartments. North

Dearborn separately contracted with Blitz Capital Group to purchase the penthouse unit (Unit

4700) and its parking spaces, contingent on the deconversion contract. If terminated, the Unit 4700 contract would also terminate.

¶ 3        The deconversion contract never closed, and the Association terminated it. After North Dearborn informed Blitz of the termination, Blitz sued North Dearborn, alleging breach of contract (counts I and II), common law fraud (count III), and violation of the Consumer Fraud & Deceptive Business Practices Act (count IV).

¶ 4        North Dearborn moved to dismiss under section 2-619.1 of the Code of Civil Procedure. The trial court granted the motion, finding that the Unit 4700 contract terminated on the Association's termination of the deconversion contract. The court dismissed the fraud counts, without prejudice, for failing to state a claim. When Blitz chose not to amend the fraud counts, the trial court entered a final order dismissing them with prejudice.

¶ 5        Blitz contends the trial court erred in dismissing the breach of contract claims because North Dearborn wrongfully caused the condition precedent in the Unit 4700 contract to fail and violated the contract's covenant of good faith and fair dealing by failing to close the deconversion contract. Blitz also contends its complaint stated claims for common law fraud and violation of the Consumer Fraud Act.

¶ 6        We affirm. Under its terms, the Unit 4700 contract ended when the deconversion contract ended. Nothing in the record shows North Dearborn wrongfully caused the deconversion contract to fail. Further, the complaint failed to state a claim for common law or statutory fraud, and the trial court properly dismissed it with prejudice.

¶ 7                                        Background

¶ 8        North Dearborn approached the 200 N. Dearborn Condominium Association in late 2021, proposing to purchase all units in the high-rise building and deconvert them from

condominiums into apartments. In a deconversion transaction, a buyer can purchase all units if at least 85% of unit owners agree. See 765 ILCS 605/15 (West 2024); Municipal Code of Chicago §13-72-085. The 200 N. Dearborn unit owners, including Blitz, approved the deconversion transaction. (Defendant Strategic Properties of North America LLC, a holding company that owns North Dearborn, and the Association are not parties to this case).

¶ 9 The deconversion contract, executed on July 22, 2022, provided for a 60-day due diligence period and a document delivery date 60 days later. The transaction was to close 15 days after the document delivery date, November 24, 2022, subject to extension by mutual agreement. The contract had no financing contingency provision.

¶ 10 Also on July 12, 2022, North Dearborn contracted with Blitz to purchase Unit 4700 and its parking spaces. A rider provided that the transaction is "expressly conditioned upon the consummation of *** the Deconversion Contract." If North Dearborn determines "the Deconversion closing will not occur and/or if the Deconversion Contract with the Association is terminated *** the Contract and Rider shall be deemed null and void *** and neither party will have any further obligations to each other." The Unit 4700 contract also lacked a financing contingency provision.

¶ 11 The Association granted North Deaborn multiple extensions of the due diligence period. In October 2022, in connection with an extension, Strategic Properties established an email address for unit owners who wanted to sell their units before the deconversion closing "at the current market rate (not the contract price)." Strategic Properties made the same offer to unit owners in May 2023. According to Blitz, a Strategic Properties representative told a Blitz representative that North Dearborn did not intend to purchase units before the deconversion contract closed, but made the offer to obtain the extension.

¶ 12    A seventh and final extension set the closing date for May 13, 2024. When the transaction did not close, the Association declared North Dearborn in default and demanded a closing on May 21. When that date passed without closing, the Association terminated the deconversion contract.

¶ 13    In August 2023, the Association told Blitz and others that North Dearborn confirmed it had secured financing and would close on the deconversion contract in six to eight weeks. When that closing did not occur, Blitz sent a letter to North Dearborn demanding a closing on the Unit 4700 contract within 30 days. North Dearborn did not respond.

¶ 14    On February 20, 2024, Blitz filed a complaint against North Dearborn alleging breach of contract (count I sought specific performance and count II sought monetary damages), common law fraud (count III), and violation of the Consumer Fraud & Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) (West 2024)) (count IV). The breach of contract claims alleged that by failing to respond to Blitz's request for reasonable assurance of its ability and intent to complete its purchase of Unit 4700, North Dearborn materially breached the spirit and terms of its agreement with Blitz and the implied covenant of good faith and fair dealing.

¶ 15    As to the fraud claims, Blitz alleged that by omitting a financing contingency in the deconversion contract, North Dearborn falsely represented it had the funds to close the sale, which induced Blitz to agree to sell Unit 4700. Blitz also alleged that North Dearborn falsely told unit owners they were willing to purchase units at the current market price and, in August 2023, falsely told Blitz that they had secured funding and that the deconversion contract would close within weeks. Blitz contends those false statements constitute common law fraud and are deceptive acts or practices under section 505/2 of the Consumer Fraud Act. 815 ILCS 505/2 (West 2024).

¶ 16 North Dearborn moved to dismiss under section 2-619.1 of the Code of Civil Procedure. (Code) 735 ILCS 5/2-619.1 (West 2024). It argued that the breach of contract claims should be dismissed because the Association's termination of the deconversion contract ended the Unit 4700 contract. North Dearborn also argued that the (i) the common law fraud claims were not alleged with sufficient specificity and (ii) Blitz is not a "consumer" for purposes of the Consumer Fraud Act and failed to allege sufficient facts showing it passes the "consumer nexus test."

¶ 17 After a hearing, the trial court dismissed the breach of contract claims with prejudice, finding the contract was expressly conditioned on the closing of the deconversion contract. The court rejected Blitz's argument that North Dearborn wrongfully caused the contingency to fail by refusing to close on the deconversion contract, noting the Unit 4700 contract did not require North Dearborn to complete the deconversion contract but allowed the Association or North Dearborn to terminate it.

¶ 18 The court dismissed the fraud claims without prejudice under section 2-615 of the Code, finding the complaint failed to allege sufficient facts to support either claim. After Blitz told the court it would not amend, the court dismissed the fraud claims with prejudice.

¶ 19 Analysis

¶ 20 Standard of Review

¶ 21 Section 2-619.1 combines sections 2-615 and 2-619 of the Code. See 735 ILCS 5/2-615, 2-619, 2-619.1 (West 2024). "A motion to dismiss under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West [2024])) tests the legal sufficiency of the complaint, whereas a motion to dismiss under section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West [2024])) admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that

defeats the cause of action. [Citations.]" *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). In reviewing a dismissal under sections 2-615 and 2-619, "we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party." *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 684 (2010). Dismissal occurs where no set of facts entitles a party to relief. *Id*. We review dismissal under section 2-619.1 *de novo*. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. We may affirm on any basis in the record, regardless of the trial court's reasoning. *Id*.

¶ 22                                    Breach of Contract Claims

¶ 23        Blitz contends North Dearborn wrongfully prevented a condition precedent from occurring by breaching the deconversion contract.

¶ 24        Similar to estoppel, the "wrongful prevention doctrine" prohibits a party from profiting through its own wrongdoing. *Cummings v. Beaton & Associates, Inc.*, 249 Ill. App. 3d 287, 307 (1992). "If one party directly causes a contractual condition to fail ***the contract may be fully enforced against that party; one cannot take advantage of [its] own conduct and then claim that the resulting failure of the condition defeats [its] liability." *Id*. at 306. The doctrine does not apply when a party, under no contractual obligation to perform or refrain from performing an act, does something that incidentally operates to the disadvantage of another contracting party. *Id*. at 307.

¶ 25        Blitz's reliance on the wrongful prevention doctrine is misplaced. Nothing in the record suggests North Dearborn breached the deconversion contract or intentionally prevented its closing. The Unit 4700 contract was conditioned on the deconversion contract closing, but did not require North Dearborn to do or refrain from doing anything to ensure the contract closed.

After multiple delays, the Association terminated the contract as it had the right to do. Blitz cites nothing showing North Dearborn "directly caused" the contract to fail.

¶ 26    Similarly, we disagree with Blitz's contention that North Dearborn violated the Unit 4700 contract's covenant of good faith and fair dealing.

¶ 27    Every contract contains an implied covenant of good faith and fair dealing. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995). The covenant requires that a party vested with contractual discretion exercise it reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995). But parties are entitled to enforce the terms of a contract to the letter, and the covenant cannot overrule or modify express terms. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 113 (1993).

¶ 28    The Unit 4700 contract included a covenant of good faith and fair dealing. It also expressly provided, as noted, that if the deconversion contract was terminated, it was void. Relying on *Cummings*, Blitz suggests North Dearborn caused the condition to fail, but again, nothing in the record supports that allegation. The Association's termination of the deconversion contract required termination of the 4700 Unit contract.

¶ 29    Blitz cites *Smith v. Vernon*, 6 Ill. App. 3d 434 (1972). In *Smith*, the plaintiffs contracted to purchase real estate contingent on their securing a mortgage. Plaintiffs received a reasonable mortgage offer, turned it down, and did not secure other offers. The court found that plaintiffs failed to take "reasonable efforts" and entered judgment for defendants. *Id*. at 438. While the 4700 Unit contract was contingent on the deconversion contract closing, unlike in *Smith*, nothing in the record indicates that North Dearborn failed to take "reasonable efforts" to close.

¶ 30                                    Fraud Claims

¶ 31          A cause of action for common law fraud consists of (i) a false statement of material fact, (ii) which the party making the statement knew or believed to be false, (iii) with the intention to induce the plaintiff to act (iv) and that the plaintiff reasonably relied on the false statement, (v) resulting in damages to the plaintiff. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 706-07 (2002). Fraud claims must be pled with sufficient specificity, particularity, and certainty to apprise the defendant of the grounds for the claim. See *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 722 (2008).

¶ 32          The Consumer Fraud Act protects "consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 20. (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002)). Courts liberally construe the Act to effectuate its purposes. *Robinson*, 201 Ill. 2d at 417 (citing *Cripe v. Leiter*, 184 Ill. 2d 185, 191 (1998)). Plaintiff must allege (i) defendant engaged in a deceptive act or practice, (ii) intending that plaintiff rely on the deception or practice, (iii) which occurs in the course of conduct involving trade or commerce, (iv) causing actual damage to plaintiff, (v) proximately caused by the deception. *McIntosh*, 2019 IL 123626, ¶ 21.

¶ 33          Blitz contends North Dearborn fraudulently induced it to agree to sell Unit 4700 by misrepresenting their ability to close the deconversion contract and the Unit 4700 contract. Specifically, Blitz maintains that North Dearborn falsely represented it had funds available to close by (i) not including financing conditions in either contract, (ii) offering to purchase units before the deconversion contract closed, and (iii) telling Blitz and others in August 2023 of

having secured financing and proceeding toward closing the deconversion contract. Blitz asserts these allegations survive a section 2-615 motion to dismiss. We disagree.

¶ 34    Blitz cites no cases (and we could find none) holding that the absence of a financing contingency promises or implies a party has funds to close a contract. Blitz may have presumed that without a financing contingency, North Dearborn had funds available, but the absence of a financing contingency would not constitute a false statement or a deceptive act.

¶ 35    Blitz also alleges North Dearborn's offer to purchase units before the deconversion contract closed was fraudulent because North Dearborn did not intend to purchase the units and made the offer to the Association for the purpose of extending the closing date. But Blitz fails to allege facts showing North Dearborn made the offer intending Blitz to act or that Blitz relied detrimentally on the offer. Blitz points to requesting an immediate closing after North Dearborn made the offer. Nonetheless, closing was contingent on the deconversion contract closing; Blitz had no right under the contract to close before that occurred.

¶ 36    Lastly, the complaint alleges that in August 2023, North Dearborn said it had secured funding and was preparing to close. Again, Blitz fails to allege North Dearborn made those statements to induce Blitz to act or that Blitz detrimentally relied on them. Blitz suggests the false statements about funding forced it to continue owning Unit 4700 and to incur ownership costs. But Blitz does not allege it would have sold. Without allegations of detrimental reliance, Blitz failed to state a claim for common law or statutory fraud.

¶ 37    Affirmed.