FOURTH DIVISION
January 20, 2011

No. 1-09-2440

| | | |
|---|---|---|
| MELISSA S. PIELET, Individually and on Behalf I.B.P Limited Partnership and TB Limited Partnership, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS J. HIFFMAN, E. THOMAS COLLINS, JR., RICHARD E. HULINA, and DANIEL G. ANDERSON, | ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (John E. Shaffer, | ) | |
| | ) | |
| Third-Party Defendant; | ) | |
| | ) | |
| John F. Girsch, Edward Zifkin, Mark Munaretto, and Mark Wheeles, Individually and Derivatively on Behalf of TB Limited Partnership; and Mark Munaretto and William Skrzelowski, Individually and Derivatively on Behalf of I.B.P. Limited Partnership, | ) ) ) ) ) ) | |
| | ) | |
| Intervening Plaintiffs-Appellants; | ) | No. 01 CH 21984 |
| | ) | |
| Dennis J. Hiffman, John E. Shaffer, E. Thomas Collins, Jr., Daniel G. Anderson, and Richard E. Hulina, | ) ) ) ) | Honorables David Donnersberger (December 8, 2005 order) and Mary K. Rochford (August 13, 2009 order), |
| Defendants-Appellees). | ) | Judges Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Gallagher and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

This appeal stems from real estate partnerships that were formed nearly two decades ago to develop shopping centers in two suburbs largely financed through tax increment financing (TIF) bonds. This matter was litigated in the Chancery Division of the Circuit Court of Cook County for more than eight years and appellants-intervenors' cause of action was dismissed in two separate orders entered in 2005 and 2009, both times for a lack of standing. On appeal, appellants contend that both counts of their complaint were improperly dismissed. For the reasons discussed at length below, we reverse and remand.

## I. BACKGROUND

The partnerships in question were formed by various persons who were employed in a Chicago real estate development firm. Appellants, intervening plaintiffs (intervenors) below,[1] were limited partners in two Illinois limited partnerships: I.B.P. Limited Partnership (IBP) and TB Limited Partnership (TB), of which Dennis J. Hiffman, John E. Shaffer, E. Thomas Collins, Jr., Daniel G. Anderson, and Richard E. Hulina (defendants) were the general partners in one or both of the partnerships. Defendants were principals in HSA Commercial Real Estate, Inc. (HSA), in the early 1990's, with intervenors then being either employees or contractors of HSA.

The first involved partnership, IBP, was formed by defendants in January 1992 for the

---

[1] The underlying litigation was initially commenced by Melissa S. Pielet, however, she later withdrew. Another individual, Keith Bank, assumed Pielet's role as party plaintiff for a short time, but also withdrew. Appellants, consisting of Mark Munaretto, William Skrzelowski, John Girsch, Edward Zifkin, and Mark Wheeles, filed a motion to intervene which was granted, and thereby became the intervening-plaintiffs below.

purpose of developing a shopping center in Bedford Park, Illinois. Various employees and contractors of HSA were offered the opportunity to become limited partners of IBP in exchange for a nominal capital contribution of $10 per 1% of ownership. Intervenors Mark Munaretto and William Skrzelowski each became a 0.5% limited partner in this entity. The second partnership, TB, was formed in May 1993 by Hiffman, Shaffer, Collins and Hulina, for the purposes of acquiring and developing property in Broadview, Illinois. Again, employees and contractors were offered the opportunity to buy into the partnership as limited partners for $10 per 1% of ownership. In July 1993, intervenors John Girsch, Edward Zifkin, and Mark Wheeles each became 0.5% limited partners, and Munaretto became a 0.75% limited partner.

Simply stated, the two projects undertaken by IBP and TB involved substantial real estate redevelopment. The general partners planned to utilize TIF bonds issued by the respective municipalities involved in the projects. TIF bonds are financial instruments issued by municipalities to assist in the funding of redevelopment projects in designated areas. See 65 ILCS 5/11-74.4 *et seq.* (West 2008). The principal and interest on TIF bonds are paid from the increase in real estate taxes, and sales taxes in certain cases, that is anticipated to occur from a successful redevelopment project. IBP and TB entered into separate redevelopment agreements with the Villages of Bedford Park and Broadview, and pursuant to the agreements, each village issued senior lien TIF bonds (Senior Bonds) to the partnerships. Bedford Park issued $10.5 million in Senior Bonds and Broadview issued $23 million, with William Blair & Company and Dain Bosworth acting as the respective underwriters.

In addition to the Senior Bonds, the two villages agreed to issue TIF bonds subordinate to

3

the Senior Bonds. Bedford Park issued "Developer Bonds" with a face value of $7 million and Broadview issued "Junior Bonds" in the amount of $8 million. Because the Developer and Junior Bonds were subordinate to the Senior Bonds, principal and interest would only be paid to the holders in the event that the incremental tax revenues exceeded the amounts required to satisfy all the principal and interest payments of the Senior Bonds. One of the general partners, E. Thomas Collins, Jr., stated in a sworn affidavit and a deposition that it was discussed and understood between the limited and general partners that the subordinate bonds would be taken by the general partners due to the personal investments they had made in creating the projects. Intervenors, on the other hand, deny being notified that the general partners would acquire the Junior or Development Bonds for themselves and the partnership agreements themselves were silent on the subject.

In any event, the Developer Bonds were issued in June 1992 to IBP, which were then purchased by the general partners of IBP for $550,000, netting the partners $5,500 per percentage point of interest. The purchase was disclosed to the limited partners in a June 11, 1992, letter, which also enclosed checks payable in appropriate amounts to each partner. The purchase price was based on a draft valuation letter by Charles Freeburg of William Blair & Company. In a separate transaction, the Junior Bonds were issued directly to the general partners of TB around September 1994. The issuance was treated as a distribution against their partnership capital accounts, which were reduced by the face amount of the Junior Bonds.

In the several years subsequent to the bond transactions, the redevelopment projects eventually became successful, and as a result, tax revenues were generated in excess of the

projects' projections. Because of this, the Senior Bonds' obligations were able to be fulfilled (with cash distributions being made to all partners) and the Developer and Junior Bonds, in turn, increased in value. The transactions revolving around the Developer and Junior Bonds, and other certain events outlined below, would eventually serve as the basis of intervenors' allegations of a breach of fiduciary duty by defendants.

### A. TB Partnership Events and Proceedings

In 1999, Broadview unexpectedly refinanced the Senior and Junior Bonds. New bonds with lower interest rates were issued, and pursuant to the redemption provision of the original Junior Bonds, Broadview paid defendants, as general partners of TB, $9 million in order to redeem the bonds. Up to that point, the general partners of TB were paid approximately $4.35 million in interest payments as well. In 2001, Melissa S. Pielet, individually and derivatively on behalf of IBP and TB, filed an action against the defendants, alleging that they breached their fiduciary duties to the partnerships by transferring the subordinated bonds to themselves for their own benefit. The parties subsequently engaged in discovery and motion practice for over a year. During that time, Broadview Village Center (the shopping mall owned and developed by TB) lost two large tenants. As a result, TB's rental income fell short of its financial obligations and an action to foreclose was initiated against TB's mortgage.

To avoid foreclosure, TB developed a complex plan to recapitalize and restructure its debts. A key component of the plan included plans to negotiate a contract with Wal-Mart where, among other things, it would purchase from TB a vacant building in the Broadview Village Center along with the underlying real estate. To implement the plan, however, it was determined that TB

would require $5.5 million in cash, thus triggering a "capital call" under which the partners would all contribute funds in proportionate share to meet the financial needs of the partnership. In this particular agreement, the limited partners were not required to contribute, but it provided that any partner who declined to contribute would forfeit his or her partnership interest. The capital call in question was set to occur on September 30, 2003.

Around the same time, the general partners proposed to settle Pielet's action by making a $5.5 million loan to TB themselves in place of the capital call. In December 2003, Pielet withdrew as a plaintiff from the action she initiated and Keith Bank, another limited partner, then filed and was granted a motion for leave to intervene as party plaintiff. Shortly thereafter, however, intervenors averred that Mr. Bank was not representing the partnerships in their best interests. They then sought and obtained leave to intervene in this action in February 2004.

In March 2004, the circuit court ordered defendants to issue a notice of their proposed settlement to all partners of TB. The notice explained that under the proposed settlement, the capital call would be suspended and that no limited partner would forfeit an interest in TB by failing to contribute a proportionate share. The obligation to contribute, however, would be reinstated if the loan or settlement was terminated. Intervenors initiated proceedings objecting to the proposed settlement and requested the circuit court to disapprove it. Fairness hearings were conducted in May 2004 but before the circuit court could rule, defendants filed a notice withdrawing the proposed settlement, explaining that Wal-Mart had terminated its contract and would not be purchasing the building or real estate as anticipated, thwarting the original refinancing strategy. The $5.5 million capital call was reinstated, and each partner was notified

that he or she had 30 days, or until July 30, 2004, to elect whether to contribute a proportionate share of the call pursuant to the agreement.

On the penultimate day before the effectiveness of the capital call, intervenors filed a motion for a temporary restraining order (TRO), seeking to prevent defendants from foreclosing their partnership interests in the event intervenors chose not contribute to the capital call. The motion was denied after a lengthy and spirited argument in open court and intervenors were specifically notified by the trial court that if they did not contribute their proportionate share of the capital call, they "would be out of business." Intervenors declined to contribute, which ineluctably led to a motion to dismiss the claims relating to TB, namely count II of intervenors' amended complaint, arguing that intervenors lacked standing to pursue their claims after forfeiting their interests. The circuit court granted the motion to dismiss in a written order on March 24, 2005. Intervenors filed a "Corrected Amended Complaint," which defendants again moved to dismiss due to a lack of standing. The motion was granted on December 8, 2005, in one of the written orders from which intervenors appeal.

B. IBP Partnership Events and Proceedings

The only intervenors who held interest in IBP were Skrzelowski and Munaretto. The IBP partnership agreement provided that the partnership could repurchase the interest of any limited partner who terminates his or her employment with the partnership or a related entity. Paragraph 17 of the IBP partnership agreement provides for a "Repurchase Option of the Partnership." In the event that a limited partner terminated his employment with "the Partnership or any entity in which any Partner is affiliated," the terminated partner "shall give written notice to the Partnership

7

which shall state all details regarding such Repurchase Event." The provision further provides that if the terminated partner fails to give notice of repurchase, the partnership itself may give such notice on behalf of the terminated partner "at any time thereafter." At that point, the partnership has the option to acquire the partnership interest of the terminated partner.

Munaretto and Skrzelowski left HSA in 1993 and 1994, respectively, but neither individual ever issued a repurchase notice as called for in the agreement. After another dispositive motion failed in the trial court, on April 17, 2009, IBP issued repurchase notices to Munaretto and Skrzelowski pursuant to the authorization in the IBP partnership agreement. Included with the notice was a repurchase agreement providing that their interests would be purchased by IBP according to a valuation provision within the IBP partnership agreement, which essentially provided that the difference between a limited partner's initial investment and the amount of cash distributions received is the repurchase value. Although Munaretto and Skrzelowski did not execute and return their respective agreements, the IBP partnership agreement contained a power of attorney provision allowing the general partners to execute such a document on their behalf. On April 30, 2009, the agreements were accordingly executed by a general partner. After Munaretto's and Skrezlowski's interests were repurchased, defendants filed a motion to dismiss their claims for lack of standing. On August 13, 2009, the circuit court granted the motion in a written order. Intervenors now timely appeal.

## II. ANALYSIS

### A. Dismissal of Count II (TB)

On appeal, intervenors first contend that the circuit court improperly dismissed count II of

their amended complaint. More specifically, they argue that they sufficiently alleged individual claims for restoration and thus count II should not have been dismissed for lack of standing. Count II alleged a breach of fiduciary duty regarding TB, concerning the transaction of the Junior Bonds to defendants. The circuit court's written order stated that defendants sought to dismiss count II because the intervenors failed to state an individual claim. Having found that the intervenors were no longer members of the partnership involved in count II, the circuit court next found they no longer had standing to bring claims on behalf of the partnership. The order also noted that while plaintiffs "do now make a claim for restoration of their partnership interests, they allege no facts of individual harm that would entitle them to such restoration."

Defendants' motion to dismiss was based upon sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2008)). A motion to dismiss under section 2-615 admits all well-pleaded facts and attacks the legal sufficiency of the complaint. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 790 (2001). A motion to dismiss under section 2-619, on the other hand, admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). We review an order granting a motion to dismiss pursuant to section 2-615 or section 2-619 *de novo*. *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 719 (2008). Furthermore, when reviewing motions under either section 2-615 or 2-619, we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in

favor of the nonmoving party in order to determine whether a cause of action can be sustained. *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 684 (2010).

A partnership is a contractual relationship and as such, contract law applies and a partnership is accordingly controlled by the terms of the agreement under which it is formed. Fisher v. Parks, 248 Ill. App. 3d 666, 674-75 (1993). If the written agreement is unambiguous, the court must construe the parties' intent from the writing itself as a matter of law and effectuate its plain and ordinary meaning. *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 308 (2008). However, no language in an agreement, however clear and explicit, can reduce a partner's fiduciary duty. See *1515 North Wells, L.P. v. 1513 North Wells, L.L.C.*, 392 Ill. App. 3d 863, 874 (2009). The existence of a fiduciary relationship between all partners is well-established, and each partner is bound to exercise the utmost good faith and honesty in all matters relating to the partnership business. *Winston & Strawn v. Nosal*, 279 Ill. App. 3d 231, 239-40 (1996). Illinois has held that this fiduciary duty "prohibits all forms of secret dealings and self-preference in any [partnership] matter" (*Winston & Strawn*, 279 Ill. App. 3d at 239-40; see *Bakalis v. Bressler*, 1 Ill. 2d 72, 79 (1953); *Labovitz v. Dolan*, 189 Ill. App. 3d 403, 412 (1989)), and also "requires each partner to fully disclose partnership business to other partners" (*Winston & Strawn*, 279 Ill. App. 3d at 240 (citing *Borys v. Rudd*, 207 Ill. App. 3d 610, 620 (1990))).

We initially note that the circuit court ruled after intervenors' emergency TRO motion that the capital call issued by TB was "indeed authorized by the terms of the agreement" between the partners. This finding is not disputed on appeal. Intervenors did not contribute their required share of the capital call, and pursuant to the terms of TB's partnership agreement, they forfeited

10

any interest they had in the partnership. Subsequently, defendants filed a motion to dismiss for lack of standing, which the circuit court granted.

Superficially, dismissal would appear proper based on the rules of standing because generally, individuals cannot maintain a derivative action against a partnership if they have no interest in the partnership. See *Caparos v. Morton*, 364 Ill. App. 3d 159, 167-68 (2006); *Lower v. Lanark Mutual Fire Insurance Co.*, 151 Ill. App. 3d 471, 473 (1986). Intervenors, however, point to *Labovitz v. Dolan*, 189 Ill. App. 3d 403 (1989), in support of their argument that their cause of action should not have been dismissed. In *Labovitz*, the plaintiffs were former limited partners in a partnership with the defendant general partner who had sole management discretion pursuant to the underlying partnership agreement. The partnership incurred significant tax obligations but the general partner withheld cash distributions that would have covered plaintiffs' associated *pro rata* share. Plaintiffs sold their partnership interests to the general partner at a "bargain price" due to the economic burden but subsequently filed a complaint against the general partner for breach of fiduciary duty. The plaintiffs' complaint was dismissed by the circuit court, which held that the general partner's acts were within the broad discretion granted to him by the partnership agreement. On appeal, this court reversed and remanded, holding that a general partner's broad discretion in the cash distributions of the partnership does not trump, but instead exists concurrently with, the general partner's fiduciary duty owed to the limited partners in dealing with them and the assets of the partnership. *Labovitz*, 189 Ill. App. 3d at 412. Although *Labovitz* is, in a sense, factually dissimilar, we nevertheless find it to be substantively instructive.

Here, intervenors' complaint alleges that defendants breached their fiduciary duties by: (1)

misappropriating the Junior Bonds; and (2) issuing a capital call that was only necessitated by their alleged misappropriation. While we are not bound to accept the complaint's conclusory allegations, as noted above, we accept all well-pleaded facts in the complaint as true and will draw all reasonable inferences from those facts in favor of the nonmoving party in order to determine whether a cause of action can be sustained. *Dopkeen*, 399 Ill. App. 3d at 684. With this in mind, a close examination of the complaint and record raises a number of concerns regarding the defendants' acts revolving around the transaction of the Junior Bonds. First, although Collins' affidavit asserts that he and other general partners had somehow related to the intervenors that the Junior Bonds would be only for the benefit of the general partners, it is telling that the TB partnership agreement is completely silent on the issue. Second, the bond trustee for the Village of Broadview was apparently directed to issue the Junior Bonds directly to the general partners. This event is highly suspect given the language within the applicable redevelopment agreement between TB and the Village of Broadview indicating that any Junior Bonds issued would be delivered to and purchased by the "Developer," which includes TB as a whole but not the general partners as a discrete entity. Third, from the record and complaint it appears that at the time of the Junior Bonds' issuance, intervenors were unaware of the events surrounding the transaction of the Junior Bonds. Finally, we note that in apparent consideration for the Junior Bonds, the capital accounts of the general partners were reduced, however, the limited partners did not actually receive any cash distributions as a result of the Junior Bond transaction. The defendants, on the other hand, ultimately received over $13 million as a result of owning the Junior Bonds.

Fundamentally, we find the instant case to be analogous to Labovitz, where a general

partner's management discretion was used in breach of a fiduciary duty and created the loss of a limited partner's interest through economic coercion. We reiterate that while we offer no opinion as to the merits of the underlying case, when we take intervenors' well-plead facts as true and draw the reasonable inferences therefrom, the allegation remains that the general partners, through their management discretion and authority, obfuscated the personal taking of the Junior Bonds originally designated as partnership assets, which resulted in a financial windfall to them of over $13 million. The partnership then experienced a shortage of funds and the general partners imposed a financial obligation upon the intervenors, resulting in their loss of interests in TB. Permitting intervenors' cause of action to be dismissed, and essentially validating their loss of interest, by pointing to management discretion and authority without consideration of the overarching principles of partnership fiduciary duties here would miss the forest for the trees. As *Labovitz* discussed in detail, "partners owe each other the duty to exercise the highest degree of honesty, fairness and good faith in their dealings with one another and in the handling of partnership assets," also noting that a greater duty rests upon the general partners. *Labovitz*, 189 Ill. App. 3d at 408-09. The record casts defendants' actions into doubt and to allow dismissal under these circumstances is contrary to the principles of partnership fiduciary duty established above, and we hold that the trial court erred in dismissing count II.

## B. Dismissal of Count I (IBP)

Intervenors next contend that the circuit court improperly dismissed count I of their amended complaint. Count I of the amended complaint related to the Developer Bonds which were purchased by the general partners from IBP. The circuit court dismissed count I in

13

2009 because intervenors Munaretto and Skrzelowski lacked standing to maintain the action after IBP repurchased their partnership interests pursuant to the partnership agreement. Because the circuit court dismissed the count under section 2-619 of the Code, we review this issue *de novo*. *Illinois Non-Profit Risk Management Ass'n*, 378 Ill. App. 3d at 719. On appeal, intervenors base their arguments for reversal on waiver, *laches*, and general principles of inequity. As a threshold matter, we observe that intervenors do not dispute that the repurchase of their interests were, as a technical matter, properly executed pursuant to the IBP partnership agreement or that their claim is a derivative action. Intervenors' arguments regarding the repurchase option in the IBP partnership agreement are based upon waiver, *laches*, and equity.

As a threshold matter, we must find that waiver and *laches* provide little help to intervenors here. Waiver is the intentional relinquishment of a known right, and may be express or implied. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 673 (2007). While implied waiver of a right can arise through conduct inconsistent with an intent to enforce that right, the party seeking waiver carries the burden of "proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights." *In re Nitz*, 317 Ill. App. 3d 119, 130 (2000). As gleaned from the record and confirmed during oral arguments before this court, it is apparent that defendants were unaware of the repurchase option written into their own contract until shortly before exercising it. Given that waiver requires the party to be aware of the right, as it is an intentional relinquishment of a known right, we cannot say that defendants here technically waived the right to exercise repurchase option clause.

Intervenors' argument revolving around *laches* suffers from a different, but equally fatal,

14

legal infirmity. Generally, *laches* is an equitable doctrine precluding litigants from asserting a claim when prejudice occurs as a result of a litigant's unreasonable delay in raising that claim. *Madigan v. Yballe*, 397 Ill. App. 3d 481, 493 (2009). The two fundamental elements of *laches* are (1) a lack of due diligence by the party asserting the claim; and (2) prejudice to the opposing party. Gersch v. Department of Professional Regulation, 308 Ill. App. 3d 649, 661 (1999). We have held that *laches* is an affirmative defense, and as such, is simply unavailable to a party that is not a defendant. *Malatesta v. Mitsubishi Aircraft International, Inc.*, 275 Ill. App. 3d 370, 386 (1995); see *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 225 n.10 (2001) (noting that *laches* may be proper to bar a defendants' counterclaim but not to prevent defendants' assertion of a forfeiture of a lease agreement through default). Although count I was dismissed based on a lack of standing through defendants' motion, defendants have not raised any counterclaim to which intervenors are a defendant. Accordingly, we find the doctrine of *laches* to be inapplicable here.

Intervenors lastly argue that it would be inequitable to allow defendants to exercise the repurchase option. Given the specific circumstances of the instant case, we are persuaded that they should prevail on this argument. Intervenors argue that a court of equity is duty-bound to examine substance rather than the form of a transaction (*Reese v. Melahn*, 53 Ill. 2d 508, 513 (1973)), and the maxim that "equity considers that as done which ought to be done" (*Cesena v. Du Page County*, 145 Ill. 2d 32, 38 (1991)). Along with these general principles, we reiterate that the fiduciary duties discussed above relating to TB's partners exist with equal strength here among IBP's partners as well. Furthermore, we have held that " '[a] convenant of good faith and

fair dealing is implicit in every contract as a matter of law.' " *Horwitz v. Sonnenschein Nath and Rosenthal, LLP*, 399 Ill. App. 3d 965, 978 (2010) (quoting *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1152 (2004)). A reason this convenant is implied is to protect the parties such that no party takes advantage of another "in a way that could not have been contemplated at the time the contract was drafted." *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 286 (2007). Disputes involving the exercise of good faith generally arise when one party is given broad discretion in performing its obligations under the contract, and therefore "[t]he duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." *Gore*, 376 Ill. App. 3d at 286.

According to a sworn declaration by John E. Shaffer, the purpose in offering partnership interests to Munaretto and Skrzelowski was to motivate them as HSA employees. Should they somehow sever their associations with HSA, Shaffer stated that there would be no relevance in motivating them as an HSA employee and the repurchase clause within the IBP partnership agreement served as the vehicle to buy back their interests. An examination of the underlying proceedings, however, indicates that the exercise of the repurchase option could have been effected when Munaretto and Skrzelowski left HSA in the early 1990's. Despite this, defendants participated in the subsequent litigation for more than eight years. In 2009, after having a different dispositive motion fail before the trial court, defendants appeared to adjust their strategy. As stated during oral arguments before us, after a careful rereading of the IBP partnership

16

agreement, defendants decided to exercise the repurchase option and shortly thereafter filed a motion to dismiss intervenors' claims for a lack of standing. The motivation behind the exercise of that right was not to buy back interests of limited partners no longer associated with HSA, but primarily to simply remove intervenors' standing. Doing so is an exercise of discretion that was utilized in a manner inconsistent with the parties' reasonable expectations. While we acknowledge that repurchase options may legitimately serve a variety of purposes, they cannot operate to remove a party's standing under circumstances like those in the case *sub judice*. Accordingly, count I was improperly dismissed and we reverse.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

Reversed and remanded.

1-09-2440

| Please Use Following Form:<br><br>Complete TITLE of Case | MELISSA S. PIELET, Individually and on Behalf I.B.P Limited Partnership and TB Limited Partnership,<br><br>               Plaintiff,<br><br>          v.<br><br>DENNIS J. HIFFMAN, E. THOMAS COLLINS, JR., RICHARD E. HULINA, and DANIEL G. ANDERSON,<br><br>               Defendants<br><br>(John E. Shaffer,<br><br>               Third-Party Defendant;<br><br>John F. Girsch, Edward Zifkin, Mark Munaretto, and Mark Wheeles, Individually and Derivatively on Behalf of TB Limited Partnership; and Mark Munaretto and William Skrzelowski, Individually and Derivatively on Behalf of I.B.P. Limited Partnership,<br><br>               Intervening Plaintiffs-Appellants;<br><br>Dennis J. Hiffman, John E. Shaffer, E. Thomas Collins, Jr., Daniel G. Anderson, and Richard E. Hulina,<br><br>               Defendants-Appellees). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

18

| | |
|---|---|
| Docket No. <br><br> COURT <br><br><br> Opinion Filed | No. 1-09-2440 <br> Appellate Court of Illinois <br> First District, FOURTH Division <br><br> January 20, 2011 <br> (Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the judgment of the court, with opinion. <br> Gallagher, P.J., and Pucinski, J., concurred. |
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin: <br> The Honorables David Donnersberger and Mary K. Rochford, Judges Presiding. |
| For APPELLANTS, John Doe, of Chicago. <br><br> For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel) <br><br> Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented. <br><br> Attorneys for **Intervening-Plaintiffs/Appellants:** <br><br> Edward T. Joyce <br> Robert D. Carroll <br> Edward T. Joyce & Associates, P.C. <br> 135 S. LaSalle St., Ste., 2200 <br> Chicago, IL 60603 <br><br> Attorneys for **Defendants/Appellees**: <br><br> Bennett W. Lasko <br> Aruna B. Subramanian <br> DRINKER BIDDLE & REATH LLP <br> 191 N. Wacker Dr., Suite 3700 <br> Chicago, IL 60606 <br> 312.569-1000 |