2025 IL App (1st) 250257-U

SECOND DIVISION
December 16, 2025

No. 1-25-0257

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MG DEVELOPMENT SOUTH, LLC, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 2021 L 012320 |
| THE CITY OF HARVEY, | ) | |
| Defendant-Appellee | ) | |
| (Christopher Clark, in his official capacity as Mayor of the City of Harvey, Defendant). | ) | Honorable Daniel J. Kubasiak, Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The trial court properly granted defendant's motion for summary judgment because the statute of limitations barred plaintiff's breach of contract claim. The doctrine of equitable estoppel does not bar a statute of limitations defense. Affirmed.

¶ 2   Plaintiff MG Development South, LLC (MG), filed a complaint alleging breach of contract against defendants the City of Harvey (the City) and Christopher Clark, in his official capacity as

Mayor of the City.[1]  The City subsequently filed a motion for summary judgment, which the trial court granted.  On appeal, MG contends that the court erroneously found that the accrual date for the City's breach contradicted the "clear and unambiguous" language of the amended contract. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                 BACKGROUND

¶ 4     On December 10, 2021, MG filed its complaint against the City and Clark.  On May 6, 2022, MG filed its amended complaint, which is the operative complaint in this appeal.  MG alleged three counts:  (1) breach of contract, (2) declaratory judgment (that a "valid and binding agreement exists between the parties"), and (3) quantum meruit.  The following allegations are taken from the parties' pleadings.

¶ 5     Beginning in 2007, MG began investing time and capital to acquire a property commonly known as the "Dixie Square Mall" in Harvey, Illinois (the Property), as well as 170 acres of additional real estate (the Ancillary Property) and vacant lots and boarded-up properties that the City owned (the City Property).  In March 2007, MG began to discuss its plan to revitalize the Property with the City.  MG and the City agreed to enter into a written agreement that would include in part the City's obligation to reimburse MG for all costs arising from improving the Property.  The discussions culminated in the parties' agreement that the financing would consist of a "public-private partnership."  This plan included tax increment financing (TIF) bonds, *i.e.*, bonds issued pursuant to the Tax Increment Allocation Redevelopment Act (the Act) (65 ILCS 5/11-74.4-1 *et seq.* (West 2006)).[2]

---

[1]  Clark was subsequently dismissed as a defendant and is not a party to this appeal.

[2]  TIF bonds are financial instruments issued by municipalities to assist in the funding of redevelopment projects in certain designated areas.  See 65 ILCS 5/11-74.4-1 *et seq.* (West 2006). The principal and interest on TIF bonds are paid from the increase in real estate taxes (and in certain cases, sales taxes) that is anticipated to occur from a successful redevelopment project. *Pielet v. Hiffman*, 407 Ill. App. 3d 788, 790 (2011).

¶ 6     The City's and MG's discussions culminated in a "Redevelopment and Economic Incentive Agreement" (the RDA).   On December 30, 2009, the City passed Resolution 2530, which essentially stated that the RDA was "approved and further negotiable upon mutual agreement" between the City and MG.  The resolution also noted that the City "entered into the TIF Inducement Agreement" with "the developer of [the Property]."  The resolution included a copy of the RDA. Although the RDA was signed by Clark and MG's "manager" (Joseph E. Miles), the RDA's title page indicated that it was a "draft for discussion purposes only," and the date of the RDA was incomplete, reading only "December __, 2009."

¶ 7     Recital 15 of the RDA provided in relevant part as follows:

> "[T]he City *** shall take all steps, hold all hearings and pass all legislation necessary to establish a new redevelopment area that encompasses the [Property and Ancillary Property] (the 'New Redevelopment Area').  In accordance with the Act, the Mayor and the Aldermen of the City *** shall *** approve a new Tax Increment Financing Redevelopment Plan and Plan for the New Redevelopment Area (the 'New Redevelopment Plan') by adopting all necessary ordinances required by law and the Act ***, which will allow for TIF to be used to redevelop the Property."

Recital 15 further described the boundaries of the New Redevelopment Area by reference to certain streets, including a reference to the westernmost boundary as "Western Avenue to the West." Article IV of the RDA provided in relevant part that, concurrently with the execution of the RDA, the City would undertake its "best efforts" to acquire the Ancillary Property and convey it to MG.

1-25-0257

¶ 8     Paragraph A of Article VIII of the RDA, entitled "Issuance of Bonds," stated the following:

"A.     Issuance of Bonds.     To fulfill its obligations to reimburse [MG] *** the Reimbursement Amount and any other costs and fees due to [MG] pursuant to the terms of this Agreement, the City shall issue bonds on or prior to June 30, 2010, (which date may be extended by mutual agreement of the Parties) the initial issuance of [$20 million] of bonds may include, without limitation, TIF Bonds and any other bonds needed to reimburse [MG] the Reimbursement Amount (collectively, 'Bonds') in the manner set forth below.     NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH HEREIN, IF THE ISSUANCE OF THE TIF BONDS IS INSUFFICIENT TO REIMBURSE [MG] AS PROVIDED FOR HEREIN, THE CITY SHALL ISSUE ADDITIONAL GENERAL OBLIGATION BONDS, WHICH SHALL BE A GENERAL OBLIGATION OF THE CITY AND SHALL BE DEEMED SECURED BY THE FULL FAITH AND CREDIT OF THE CITY, SUFFICIENT IN AMOUNT TO PROVIDE [MG] WITH ALL COSTS AND REIMBURSEMENTS DUE TO [MG] HEREUNDER."

Paragraph B of this article stated in relevant part that "the City's failure to sell, issue and deliver the TIF Bonds shall not constitute a default under this Agreement, provided that the City reimburses [MG] in accordance with the provisions of this Agreement."

¶ 9     Article XVI ("Default and Cure") of the RDA listed various events of default, including the following: "If the City or [MG] fails (in whole or in part) *** in fulfilling any of its obligations

4

under this Agreement or fails to materially perform, observe or comply with any of the *** obligations hereunder."

¶ 10    On or about May 24, 2010,[3] the parties amended the RDA. Among other things, recital 15 was amended in two respects. First, the western boundary of the New Redevelopment Area was changed from Western Avenue to "the westernmost City boundaries." Second, the amendment added that the City's obligation to establish the New Redevelopment Area would not arise "until the substantial completion of the demolition of" the Property by MG.

¶ 11    On December 10, 2021, MG filed its initial three-count complaint against the City and Clark. Count I of the complaint alleged breach of contract, count II sought a declaratory judgment that the RDA was a binding agreement and defendants' wrongful action caused over $50 million in damages to MG, and count III sought relief under a quantum meruit theory. On March 25, 2022, defendants filed a motion to dismiss MG's complaint. On May 3, 2022, however, MG filed an "agreed motion" for leave to file an amended complaint. MG's agreed motion stated that, following discussions between the parties, they agreed that, subject to the trial court's approval, MG would be granted leave to file an amended complaint on or before May 6, 2022, and defendants would answer or otherwise plead to the amended complaint by June 3, 2022. The court entered an order granting MG's agreed motion on May 4, 2022.

¶ 12    On May 6, 2022, MG filed a three-count verified amended complaint. Counts I and II alleged breach of contract: Count I sought money damages, whereas count II sought specific performance, namely, a judgment requiring the City to "make MG whole" by transferring title to the Property to MG and providing unspecified "monetary relief." Finally, count III sought

---

[3]    The amendment to the RDA is dated May 24, 2010. The signature block on the final page of the amendment, however, is undated, and the amendment itself appears to be a facsimile copy with a header date of June 24, 2010.

injunctive relief prohibiting the city from selling or offering to sell the Property, the Ancillary Property, and the City Property. The gravamen of MG's complaint was that the City agreed to the RDA, under which MG would remediate and revitalize the Property and Ancillary Property, but after plaintiff had spent "millions of dollars" to "clean up and demolish the Property," the City "reverted to *** neglecting the Property and failed to move forward with [MG's] plan."

¶ 13 On June 24, 2022, defendants filed a motion to dismiss MG's complaint. Defendants argued that (1) MG failed to allege sufficient facts to establish the existence of a valid, enforceable contract; (2) the breach of contract cause of action is barred by the applicable 10-year statute of limitations period; (3) MG was not entitled to specific performance because of the lack of an enforceable agreement, MG's damages are readily ascertainable, and a court order requiring transfer of title to a property would violate state laws; (4) count III (seeking injunctive relief) failed to allege a clearly ascertainable right and MG has an adequate remedy at law; and (5) the claims against Clark must be dismissed because MG failed to allege conduct on his part that would make him a proper defendant. Defendants further argued, *inter alia*, that Clark should be dismissed as a defendant because MG failed to allege that Clark specifically breached the contract or failed to pay for services and because, as a matter of law, Clark lacked the authority to bind the City.

¶ 14 On September 8, 2022, the trial court issued a written order granting in part defendants' motion to dismiss. The court dismissed Clark as a defendant with prejudice, dismissed counts II and III without prejudice, and denied defendants' motion with respect to count I.

¶ 15                    The City's Motion for Summary Judgment

¶ 16 On December 13, 2023, the City filed its motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2022)). The City argued that MG failed to establish that there was a valid, enforceable agreement between the parties. In

the alternative, the City argued that the statute of limitations barred MG's cause of action and that MG did not prove any damages that are exempt from the City's statutory immunity.

¶ 17    The City attached the deposition transcripts of Michael E. Goich and Joseph E. Miles to its motion.  In his deposition, Miles described himself as the "[c]o-manager and lead consultant" of MG and stated that Goich was "pretty much like a consultant also."  Goich explained that the letters "MG" stood for "Miles" and "Goich."[4]  During his deposition, Miles initially stated that, although the parties executed the Amendment, "a lot of the other stuff still never happened." Elaborating on this point, Miles stated that the City could not "perform their triggering event," which he described as "[p]rovide financing.  Float a note—float bonds."  When asked, Miles stated that the triggering event was supposed to occur when the Property was torn down, which he believed was near the end of 2012.  Miles subsequently admitted that, although the City was required pursuant to the RDA to issue $20 million in TIF bonds "on or before June 30th, 2010," the City had not done so.  Miles agreed that the RDA provision allowed "any other bonds" to be issued if TIF bonds could not be successfully issued.  Miles explained that, if the City "couldn't do the [TIF] bonds and note, [the City] would work with [MG] on looking at other alternatives." Miles then added that the City "didn't want to do any of them *** or *** [was] reluctant to." Goich also agreed that the RDA obligated the City to obtain financing to fund the redevelopment plan either through TIF bonds, standard bonds, or "a combination of both."  Goich further confirmed that the City's breach of the RDA prevented MG from completing the purchase of the Property "because without the bonds, we couldn't start."

¶ 18    Miles additionally stated that the City also breached the RDA by failing to purchase the Ancillary Properties by December 30, 2009 (the execution date of the RDA).  Goich similarly

---

[4]  MG's amended complaint, however, states that "MG stands for 'Main Street' 'Goich.' "

stated that the City "said one thing and [was] doing another": In essence, the City "was supposed to acquire all these properties [to] be transferred over to MG" pursuant to the RDA, but instead, the City sold various properties "across the street" that were part of MG's development plan.

¶ 19 On May 29, 2024, MG filed its response to the City's summary judgment motion. MG argued in substance that the Amendment deferred the City's obligation to issue TIF bonds until after the demolition of the Property was substantially completed. MG then concluded that, based upon this provision, its complaint was timely. MG further argued (in a single, four-sentence paragraph) that equitable estoppel also applied because MG "reasonably relied on the Amendment deferring the City's obligation to issue the TIF bonds until after the demolition in 2012."

¶ 20 On August 27, 2024, the trial court entered a written order granting the City's motion for summary judgment. The court found that the RDA was not viable without financial assistance to MG and that the amendment to the RDA "deal[t] solely with the Ancillary Property." The court further found that the RDA was a general contract and not a construction contract, and thus the 10-year statute of limitations would apply. Finally, the court found that the City breached the RDA on June 30, 2010, by failing to "provide the necessary financial [a]ssistance as required under the RDA by way of issuing bonds." The court then found that MG had to file its breach of contract claim by June 30, 2020, but it did not do so until December 2021. The court thus granted summary judgment in favor of the City. MG subsequently filed a motion to reconsider, which the court denied on January 15, 2025. This timely appeal follows.

¶ 21                                          ANALYSIS

¶ 22 On appeal, MG contends that the trial court erred in granting the City's motion for summary judgment. Specifically, MG argues that the court failed to enforce the "plain and unambiguous language" of the Amendment, which MG claims deferred the City's performance under the RDA

until MG had substantially completed demolition of the Property. MG further argues reversal is required under the equitable estoppel doctrine.

¶ 23    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id.* To determine whether there is a genuine issue of material fact, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Id.* at 131-32. Unsupported conclusions, opinions, or speculation, however, do not raise a genuine issue of material fact. *Id.* at 132. We review *de novo* the trial court's decision on motions for summary judgment. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Moreover, we review the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 24    The essential elements of a breach of contract are as follows: (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) resultant injury to the plaintiff. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 27. The terms of an agreement, if unambiguous, should generally be enforced as they appear, and those terms will control the rights of the parties. *Id.* (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998)). Any ambiguity in a contract term, however, must be resolved against the drafter of the disputed provision. *Id.*

9

¶ 25    Section 13-206 of the Code provides in pertinent part that actions on written contracts must commence "within 10 years next after the cause of action accrued ***." 735 ILCS 5/13-206 (West 2022). By contrast, section 13-214(a) provides in part that a cause of action based upon a contract for an act or omission "in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action *** knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a) (West 2022).

¶ 26    To determine the applicable statute of limitations, we focus our inquiry on the nature of the liability. See *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 469 (2008); see also *Mitchell v. White Motor Co.*, 58 Ill. 2d 159, 162 (1974) (holding that "it is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply"). To constitute an action for an act or omission "in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property" within the meaning of section 13-214, "liability must rest on construction-related activity." *Travelers*, 229 Ill. 2d at 469. For contract actions and torts arising out of contractual relationships, however, the cause of action ordinarily accrues "at the time of the breach of contract, not when a party sustains damages." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995).

¶ 27    We recognize that, under certain circumstances, the "discovery rule"—*i.e.*, the rule that the statute of limitations does not begin to run until the injured person knows or reasonably should know of the injury and that it was wrongfully caused—may delay the commencement of the limitations period even for a breach of contract action. See *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 566 (2009) (citing *Indiana Insurance Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 304 (2001)) (noting that the discovery rule "may

nevertheless delay the commencement of the statute of limitations period until the plaintiff[-insured] learns of the denial of coverage, if the plaintiff was not immediately aware of it"). Those circumstances, however, are not present here. The applicability of a statute of limitations is a legal question that we review *de novo*. *Travelers*, 229 Ill. 2d at 466.

¶ 28     In this case, we agree with the trial court that the 10-year statute of limitations applicable to written contracts is the appropriate statute. Focusing our inquiry on the nature of the liability, as we must (see *id.* at 469), MG alleged in essence that the City's liability concerned the failure of the City to issue $20 million in TIF (or general obligation) bonds, the proceeds of which would have reimbursed MG for the costs associated with demolishing the Property. No reasonable reading of MG's complaint would conclude that the City's liability rested upon "construction-related activity." See *id.* Accordingly, since the nature of the liability centered on the City's breach of a contractual provision and not construction-related activity, the 10-year statute of limitations found in section 13-206 of the Code determines the timeliness of MG's complaint. 735 ILCS 5/13-206 (West 2022). We now turn to whether summary judgment was appropriate based upon the 10-year statute of limitations.

¶ 29     Construing the pleadings, depositions, admissions, and affidavits strictly against defendant and liberally in favor of plaintiff (see *Outboard Marine*, 154 Ill. 2d at 131-32), the trial court properly granted the City's motion for summary judgment. Article VIII of the RDA required the City to issue $20 million in "TIF Bonds and any other bonds" to reimburse MG for various redevelopment plan costs on or before June 30, 2010. Miles and Goich, the two principals of MG, both stated in their depositions that the City did not issue any such bonds by the stated deadline. It is thus undisputed that the City failed to issue any TIF bonds by June 30, 2010, as the RDA required. At that point, MG's cause of action for breach of contract accrued because the City had unmistakably breached the RDA at that time. See *Hermitage Corp.*, 166 Ill. 2d at 77. MG thus

11

had 10 years from that date, *i.e.*, until June 30, 2020, to file its complaint. MG, however, filed its complaint more than one year later, on December 10, 2021, thus rendering its complaint untimely. Moreover, even assuming, *arguendo*, that the City's failure to issue the bonds constitutes construction-related activity (resulting in a four-year statute of limitations for construction contracts), MG's claim would still be untimely because the date MG filed its complaint (December 10, 2021) was more than four years after the City's breach of the RDA (June 30, 2010).

¶ 30 MG nonetheless notes that Miles stated in his deposition that a "triggering event" that the City missed involved providing financing by "float[ing]" (*i.e.*, issuing) bonds, which he believed was supposed to occur "toward[] the end of 2012." MG relies upon this assertion to claim that the statute of limitations did not begin to run until after the demolition of the Property was complete. The statement by Miles, however, is merely an unsupported conclusion or opinion, which does not raise a genuine issue of material fact. See *Outboard Marine,* 154 Ill. 2d at 132.

¶ 31 MG further argues the Amendment to the RDA "unambiguously deferred the City's performance until MG had substantially completed demolition of the [Property], an event that did not occur until 2012." In particular, MG points to a provision in the Amendment stating that the City's obligation to "establish the New Redevelopment Area" would not commence until MG had substantially demolished the Property. The City's obligation to establish a New Redevelopment Area, however, is distinct from its additional obligation to issue TIF (or other) bonds that would reimburse MG for its expenses related to the demolition of the Property. As such, the provision MG relies upon is unavailing, and its first contention of error is without merit.

¶ 32 MG further contends that the doctrine of equitable estoppel prevents the City from raising the statute of limitations defense. MG argues that it reasonably relied upon "the City's conduct and contractual promises when it demolished" the Property and absorbed all associated costs. MG

further asserts that the City continued to act as though it would perform its contractual obligations until it "abruptly refused to issue bonds and disavowed all obligations."

¶ 33    The City argues that MG has forfeited this issue because it was inadequately developed before the trial court.  We agree the issue is forfeited but for different reasons.  Before this court, MG provides a single case citation and two bare record citations, none of which provide specific support for its argument, in violation of Illinois Supreme Court Rule 341.  Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).  On this basis alone, we can reject MG's contention of error.  *Cf. Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 312-13 (2001) (addressing a claim of equitable estoppel on the merits where "the record contains the factual basis for the defense").

¶ 34    Moreover, forfeiture aside, MG's claim is substantively without merit.  A party claiming equitable estoppel must establish the following:  (1) the other person misrepresented or concealed material facts, (2) the other person knew at the time he or she made the representations that they were untrue, (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon, (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations, (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment, and (6) the party claiming estoppel would be prejudiced in relying on the representations if the other person is permitted to deny the truth thereof.  *Id.* at 313-14.  The question of estoppel turns upon the facts of each case, and the party claiming estoppel has the burden of proving it by "clear and unequivocal evidence."  *Id.* at 314.

¶ 35    It is important to note, however, that the party relying upon equitable estoppel must have had "no knowledge or means of knowing the true facts within the applicable statute of limitations."  *Nickels v. Reid*, 277 Ill. App. 3d 849, 856 (1996).  Illinois courts have long held that a party seeking refuge under the doctrine of equitable estoppel " 'cannot shut his eyes to obvious facts, or neglect

13

to seek information that is easily accessible, and then charge his ignorance to others.' " *Id.* (quoting *Vail v. Northwestern Mutual Life Insurance Co.*, 192 Ill. 567, 570 (1901)).

¶ 36    Here, the record reveals that the City failed to issue TIF bonds (or any other bonds) to reimburse MG for its demolition expenses on or before June 30, 2010, as required by the RDA. Although MG baldly asserts that the City led MG to believe the City would perform under the RDA even after the June 2010 date had passed, it provides no record citation or other evidence to support its assertion.  Since MG cannot establish the first element of an equitable estoppel claim, *i.e.*, that the City misrepresented or concealed material facts, its claim of error on appeal is doomed.

¶ 37    We therefore reject MG's contentions of error.  Since we have held that the trial court properly entered summary judgment in favor of the City, we need not address the City's counterarguments on appeal that there was no enforceable agreement between the parties, the City is immune from liability, and MG failed to prove damages.

¶ 38                                   III. CONCLUSION

¶ 39    The trial court did not err in granting the City's motion for summary judgment. Accordingly, we affirm the judgment of the trial court.

¶ 40    Affirmed.